**SCHNEIDER, Appellant,**

v.

**SCHNEIDER, Appellee.**

[Cite as *Schneider v. Schneider* (1996), 110 Ohio App.3d 487.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 95–G–1938.

Decided April 22, 1996.

488

*Newman, Leary & Brice* and *A.P. Leary,* for appellant.

*James B. Davis,* for appellee.

Ford, Presiding Judge.

This is an appeal from a Geauga County Court of Common Pleas decision which granted a divorce to appellant, Jerome J. Schneider and appellee, Christine L. Schneider.

The parties were married on July 31, 1971, and three children were born during the marriage. At the time of the final hearing, two of these children, Michael and Matthew, were adults. The third child, Danny, was nine years old. Appellant had received a mechanical engineering degree from the University of Buffalo and worked as a senior programs manager at General Electric, where in 1994 he received $74,073.72 in compensation. Appellee had achieved a high school education only, and was a homemaker for the duration of their marriage. Following the separation of this couple, she had held several jobs, and at the time of the hearing was working at Spinners, a record store, which paid her $5 an hour. Her compensation was estimated to be $4,800 annually.

This case began as a dissolution action with the required separation agreement submitted to the court by the parties. At the time of the final hearing for dissolution, appellee chose not to agree to the provisions contained in the separation agreement, and the court properly did not grant the dissolution. Appellant then filed a complaint for divorce asking that the court validate the separation agreement and adopt it in a judgment entry which granted a divorce. Appellee claimed that it would be manifestly unfair for the court to validate the separation agreement, and argued that she had only agreed to the separation agreement previously because she feared that appellant would fight her for custody of their minor son. Appellee alleged that appellant had threatened to fight for custody of Danny if she did not agree to sign the separation agreement. Appellee claimed that she signed the agreement "voluntarily under duress."

A hearing on whether to validate the separation agreement was held on May 21, 1993. The court, in an entry filed on May 24, 1993, overruled appellant's motion to validate the separation agreement, holding that the agreement was unfair to appellee and should not be enforced in the interests of justice. Appellant filed an appeal from this order which was dismissed for lack of a final appealable order by this court in *Schneider v. Schneider* (Feb. 14, 1994), Geauga App. No. 93–G–1795, unreported.

The case then proceeded to trial on the divorce complaint on February 3, 1995, and the divorce was finally granted on July 24, 1995, on terms less favorable to appellant than the original separation agreement had provided. From this order, appellant now appeals raising the following as error:

"1. The trial court erred in failing to validate the parties' separation agreement.

"2. The trial court erred in using the date of trial as the valuation date.

"3. The trial court erred and abused its discretion in the amount and duration of spousal support and the amount of attorneys fees awarded to appellee."

■ In his first assignment, appellant contends that the trial court erred when it did not validate and put into effect the separation agreement that had been previously reached by the parties in the divorce decree. The trial court determined on May 24, 1993, that the agreement was unfair and that it would be inequitable to enforce it. R.C. 3105.10(B)(2) provides the authority for a court to enforce separation agreements. R.C. 3105.10(B)(2) states that:

"A separation agreement that was voluntarily entered into by the parties *may be enforceable* by the court of common pleas upon the motion of either party to the agreement, *if* the court determines that it would be *in the interests of justice and equity* to require enforcement of the separation agreement." (Emphasis added.)

■ Accordingly, the decision to enforce a separation agreement is a discretionary one and will not be reversed on appeal absent an abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. As the court stated in *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601:

" 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable * * *.

"A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive * * *."

In this case, the trial court was presented with a separation agreement which would have awarded appellant a much larger percentage of the marital property than appellee would have received. For example, appellee was to be paid $25,000 for her interest in the marital home, which was valued by the parties at that time at $180,000.[1] Additionally, the trial court was told that appellee had signed the separation agreement because she was told by appellant that if she fought him in a divorce proceeding, he would then actively seek custody of their young son. Faced with this information, the trial court determined that it would be contrary to the interests of justice and equity to require enforcement of that agreement.

---

1. Appellee contends, and the record does reflect, that this figure was artificially low, and the final divorce decree shows an appraised value of $224,000 which was presented by a licensed real estate agent as the present market value.

Applying the abuse of discretion standard, we cannot say that the decision was unreasonable, arbitrary or unconscionable. None of the cases appellant refers us to leads to a contrary result. Appellee was not required to demonstrate fraud, duress or undue influence as appellant contends, as the statute now contains the express authority for the trial court to elect not to validate a separation agreement when it reasonably determines that it would be improper to do so. It is sufficient that the trial court found that enforcement of the agreement was contrary to the interests of justice and equity and that the record contains sufficient evidence to support that conclusion. See R.C. 3105.10(B)(2).

It is important to emphasize that a separation agreement is not ultimately binding until it is finalized. Here, appellee elected not to agree to the terms of their separation agreement. As a result, this divorce action was commenced by appellant. When faced with the substance of the agreement, the court then determined that it was inequitable and unfair, and refused to enforce it. While it is our view that domestic relations courts have had the inherent power to do this in the past, with the enactment of R.C. 3105.10(B)(2), the authority of a court to refuse to enforce a separation agreement under this statutory provision is clear, and nowhere in this statutory section is a finding of fraud, duress or misrepresentation required by the statute before an agreement may be invalidated.

Appellant also contends in his first assignment that appellee, as a party who has accepted certain benefits of the now-invalidated separation agreement, must return all of those benefits to appellant before seeking to rescind the agreement. This argument is not well taken.

Appellant refers us to the decision in *Block v. Block* (1956), 165 Ohio St. 365, 60 O.O. 1, 135 N.E.2d 857, in support of his contention that before spouses may invalidate a separation agreement, they must first return the monies, property and other tangible items that they have received or taken pursuant to a property division under the same agreement before deciding to terminate it with the goal of improving their economic situation.

Appellant's argument in this case makes two unsupportable assumptions: that this case is analogous to the scenario found in *Block,* and that appellant has some superior right to possess the marital property earned by the parties before and during the pendency of the divorce. *Block* involved a couple that had been granted a divorce, and the husband had fully carried out the terms of the agreement by paying all that he was required to pay under the divorce decree. After the divorce was final, the husband in *Block* was able to remove money from a trust that was previously thought to be out of the reach of the parties because it was thought to be irrevocable, and the wife attempted to rescind their agreement

to receive a portion of that money. The court held that where the divorce was finalized and not subject to modification, the general rule that she must return the benefit received before rescission would be applied. *Id.* at paragraph one of the syllabus. In this case, there had not been a final divorce granted, and this fact clearly distinguishes this case from *Block.*

Moreover, spouses in Ohio are presumed to have contributed equally to the accumulation of marital assets. R.C. 3105.171(C)(2). Appellant's position that appellee must return to him all of the benefits or property received before rescission is unsupportable given this presumption. Appellee had equal rights to possess the marital property, and the mere fact that she was a homemaker during the marriage is irrelevant in that determination. Appellee was not obligated to return money or property to appellant, as appellant had no superior right to possess or retain those funds until their divorce was final. Had appellee spent, wasted or squandered those funds, those actions would have been justifiably considered by the trial court when it made the final property division. Appellant's first assignment is overruled.

Appellant's second assignment claims that the trial court erred when it did not use the *de facto* date of the end of their marriage as a valuation date and instead chose the date of the final hearing for valuation purposes. R.C. 3105.171(A)(2)(a) defines the duration of the marriage for property division purposes as "the period of time from the date of the marriage through the date of the final hearing [in the divorce]." However, R.C. 3105.171(A)(2)(b) *permits* the court to use another date: "If the court determines that the use of [the final hearing date] would be inequitable, the court may select dates that it considers equitable in determining marital property." See *Berish v. Berish* (1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183.

The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C. 3105.171(A)(2)(a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion. *Blakemore.* A review of the record in this case does not demonstrate that this decision was unreasonable, arbitrary or unconscionable. No special situation that would require the use of an alternate valuation date is present, and the trial court was justified when it decided to use the final hearing date as the valuation date. See *Thomas v. Thomas* (Dec. 15, 1995), Trumbull App. No. 95-T-5183, unreported, 1995 WL 815338. Appellant's second assignment is overruled.

Appellant's third assignment alleges error in the trial court's decision to award spousal support and attorney fees to appellee. First, appellant contends that the trial court committed reversible error when it awarded spousal support

without adequately considering the statutory factors required to be addressed in R.C. 3105.18.

R.C. 3105.18 sets forth the statutory factors that must be reviewed by the trial court when determining whether an award of spousal support would be appropriate in a given case. Trial courts are required to apply these statutory factors and indicate in the final decree of divorce the underlying basis for the award in sufficient detail to enable an appellate court to determine whether the award was appropriate. See *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 96–97, 518 N.E.2d 1197, 1200–1202.

In this case, the trial court found that following a marriage of considerable duration, appellant had much higher level of education, income, and income potential, that appellee had been a homemaker throughout the marriage, that appellee was going to continue her education for approximately four additional years, and that her annual needs far exceed her present income. These findings set forth a sufficient justification under R.C. 3105.18 to award spousal support because the order clearly shows that the trial court considered the factors as is required by the statute. See *Stychno v. Stychno* (Dec. 29, 1995), Trumbull App. No. 94–T–5036, unreported, 1995 WL 815518; *Schneider v. Schneider* (1989), 61 Ohio App.3d 164, 572 N.E.2d 221. Because these findings are sufficient to support the award of spousal support in this case, the decision does not constitute an abuse of discretion. *Blakemore.*

Next, appellant contends that the amounts of spousal support and attorney fees in this case were an abuse of discretion. Specifically, appellant contends that the duration of the spousal support award was excessive, and that the award of $9,000 of attorney fees was *per se* unreasonable.

Again, the decision of whether to award spousal support is a discretionary one and will not be reversed absent an abuse of discretion. The trial court determined that given the twenty-three-year duration of the marriage (as determined by the trial court) and the wide disparity in incomes, spousal support in the amount of $900 monthly until June 30, 1998, and $700 monthly from that date until June 30, 2002, was appropriate. Appellant refers us to the decision in *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, in which the Supreme Court of Ohio stated:

"Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in

order to place a definitive limit upon the parties' rights and responsibilities." *Id.* at paragraph one of the syllabus.

Given the obvious disparity of incomes and the considerable duration of the marriage, we simply cannot determine that a seven-year spousal support award constitutes an abuse of discretion. Appellant's contention that appellee "has received a substantial property division," and that the division lowers the level of her need, again reflects his erroneous view that because he was the "breadwinner" in this marriage while appellee was a homemaker, any property received by her in the settlement was actually "his" and should be counted against his obligation. This implication is inappropriate to this court. Appellee is presumed to have contributed equally in the acquisition of all marital property, and whatever is received in an equitable property division is due to an equal entitlement to the proceeds of the marriage. Any contention that appellee is not so entitled is without merit.

■■■ Appellant finally argues that the award of attorney fees in the amount of $9,000 was an abuse of discretion. However, appellant did not argue this contention regarding the award of attorney fees in his brief, and we need not address that argument pursuant to App.R. 12(A)(2).

■■■ However, even if we chose to address the merits of this assignment, given the size of the legal expense and appellant's greater ability to pay, we do not perceive how the trial court abused its discretion when it awarded $9,000 attorney fees out of a total bill of $17,822. Appellant's third assignment is overruled.

For the foregoing reasons, appellant's assignments of error are overruled. The decision of the Geauga County Court of Common Pleas is affirmed.

*Judgment affirmed.*

NADER and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.