DECISION AND JOURNAL ENTRY
Appellant, Daniel Congrove, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that entered a judgment of divorce, divided marital property, and awarded spousal support. We reverse and remand.
Daniel and appellee, Kimberly Congrove, were married on October 16, 1976. They are the parents of two children, ages seventeen and eighteen. On May 4, 1999, Kimberly filed a complaint for divorce alleging gross neglect, mental cruelty, and incompatibility. A trial was held on September 13, 1999. Daniel, Kimberly, and Daniel's mother, Mrs. Delores Munger, were the only witnesses. On November 11, 1999, the trial court entered a decree of divorce on the grounds of incompatibility. The trial court found that Kimberly's annual income was $25,000 and Daniel's annual income from his position as a Summit County Councilman was $14,000. The court imputed $45,000 of annual income to Daniel from his cleaning business, Quality Systems. Further, the court ordered Daniel to pay $700 per month in spousal support for twenty-four consecutive months, and then $900 per month for seventy-two consecutive months, or until Kimberly's remarriage or death.
The parties entered stipulations into evidence with respect to the division of most of the marital property and debt. The only item not stipulated which is at issue, was a loan received from Mrs. Munger in the amount of $60,000. The current loan balance is approximately $58,700 with monthly payments of $499. Daniel and Kimberly made the payments prior to their separation. The trial court found the funds received from Mrs. Munger were an advance of Daniel's inheritance and allocated the debt to him in its entirety. It also determined these funds had been used to pay marital obligations, specifically tax liens.
Daniel timely appealed and has raised three assignments of error for review. They have been rearranged for ease of discussion.
 ASSIGNMENT OF ERROR III The trial court erred by failing to find the mortgage secured against the property of Helen Munger to be a marital debt and by failing to consider the debt in the division of assets and liabilities.
In his third assignment of error, Daniel argues the $60,000 loan from his mother was a marital debt, rather than an advance on inheritance as found by the trial court. Therefore, Daniel contends that the trial court should have considered the debt in its equitable division of liabilities. We agree.
When reviewing a trial court's determination in a domestic relations case, this Court must apply the abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Specifically, a "trial court's division of marital debts will be affirmed absent an abuse of discretion." Fields v. Fields (Apr. 8, 1992), Summit App. No. 15235, unreported, at 8. An abuse of discretion "`implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157. In domestic relations matters, this Court must not disturb the trial court's decision unless it involves more than an error of judgment. Booth v. Booth, supra.
A party seeking to have an asset classified as separate property has the burden of proof on the issue by a preponderance of the evidence and must trace that asset to separate property.Peck v. Peck (1994), 96 Ohio App.3d 731, 734; see, also, Franklinv. Franklin (June 8, 1994), Summit App. No. 16366, unreported at 4. However, this case concerns a division of marital debt, rather than marital property. The same burden of proof applies to a spouse seeking to classify debt as a separate liability of the other spouse. Papas v. Papas (Dec. 17, 1997), Summit App. No. 18247, unreported, at 4. The date generally used to determine the value of marital property in a divorce action is the date of the final hearing. See R.C. 3105.171(A)(2)(a).
Mrs. Munger took a mortgage against her home in the amount of $60,000. Forty-five thousand dollars of the funds went to Daniel and Kimberly, and Mrs. Munger used the $15,000 balance for her own debts. Then Mrs. Munger repaid the $15,000 to Daniel and Kimberly, bringing Daniel and Kimberly's loan balance back to $60,000. Kimberly argued that she was not a party to the loan transaction, did not know how Daniel spent the money, and that Daniel failed to show the money was used for marital purposes. The trial court found the funds were an advance on Daniel's inheritance used to meet marital obligations, specifically tax liens. It allocated the full debt to Daniel.
Although the trial court characterized the funds as an advance of Daniel's inheritance, it is more appropriately characterized as a debt. An advancement is defined as
 an irrevocable gift made by a person during lifetime to an heir, by way of anticipation of the whole or part of the estate which the heir would receive in the event of the person's death intestate. Thus, an advancement is simply an anticipation of the distribution which the law would make at the death of the donor intestate, permitting an heir to take and enjoy property in advance of the time when he would probably receive the same on final distribution of an estate.
(Footnotes omitted; emphasis added.) 1 Merrick-Rippner, Ohio Probate Law (5 Ed. 1997) 319, Section 20.1. Furthermore, a gift is defined as "`an immediate, voluntary, and gratuitous transfer of * * * personal property by one to another.'"Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, 26-27, quoting Flanders v. Blandy (1887), 45 Ohio St. 108, 113. It goes into immediate and absolute effect and has no reference to the future. Bolles, supra, at 27.
The money in question was not an irrevocable gift or gratuitous transfer with no reference to the future. Therefore, it was not an advance on inheritance. On the contrary, the monies represented a loan which both parties agreed would be repaid in the future. The testimony indicates that Mrs. Munger borrowed funds from First Financial Mortgage in order to make a subsequent loan to Daniel and Kimberly. It is undisputed that Daniel and Kimberly had been making the monthly payment of $499 on this loan since its inception, according to the terms of Mrs. Munger's loan agreement with the bank. Additionally, the codicil to Mrs. Munger's will regarding this transaction expressly states, "I hereby direct that such advancement shall be considered as a loan
and the amount due at the time of my demise shall be deducted from his share of the residual estate." (Emphasis added.) As of the time of the final divorce hearing, the characterization of the transaction in question is a debt, as evidenced by the testimony, loan payments, and the codicil to Mrs. Munger's will. As a debt, it becomes Kimberly's burden to trace the debt to a separate liability of Daniel. See Papas v. Papas, supra, at 4.
This Court addressed a similar situation in Papas v. Papas. There, the wife borrowed money from her mother and, according to her testimony, used it to pay some of the couple's debts, including taxes and expenses of their restaurant business. The husband claimed the loan was a separate liability of the wife because he didn't know about the loan and she failed to prove she spent the money on marital expenses. This Court affirmed that the loan was a marital debt because the husband had not established by a preponderance of the evidence that the loan was a separate liability of the wife. Id. at 4-5.
In the case at bar, the record indicates and the trial court found "some funds were received from Husband's mother and that they were used to pay marital obligations, particularly certain tax liens." As such, both Daniel and Kimberly benefited from the funds. There is nothing in the record to indicate that Kimberly has met her burden of proof. She has not "offered any evidence, much less established by a preponderance of the evidence, that the loan was a separate obligation of" Daniel. Id. at 5. Therefore, this is a marital debt.[1]
Daniel's third assignment of error is sustained.
 ASSIGNMENT OF ERROR I It was an abuse of discretion and against the manifest weight of the evidence for the trial court to "impute" annual income of $45,000.00 to Mr. Congrove from his commercial cleaning business, Quality Systems.
 ASSIGNMENT OF ERROR II It was an abuse of discretion and against the manifest weight of the evidence for the trial court consider (sic) its improper imputation of income to Mr. Congrove in determining the appropriateness and amount of spousal support.
For ease of discussion, this Court will address Daniel's first and second assignments of error together. Daniel argues the trial court erred in imputing income to him in the amount of $45,000 from his cleaning business, Quality Systems, and subsequently using this amount to determine spousal support. He contends there was no evidence in the record to support the imputation.
R.C. 3105.18 sets forth the statutory factors that the trial court must consider when making an award of spousal support. A review of the factors contained in R.C. 3105.18(C) reveals no requirement obligating a trial court to impute income to a party. Rather, when contemplating a spousal support award, R.C.3105.18(C) requires that a trial court consider, among other things, the income of the parties and the relative earning abilities of the parties. R.C. 3105(C)(1)(a) and (b); see, also,Petrusch v. Petrusch (Mar. 7, 1997), Montgomery App. No. 15960, unreported, 1997 Ohio App. LEXIS 823, at *9-10. "Like an award of spousal support, itself, the imposition and amount of potential income to be imputed are matters to be determined by the trial court based upon the facts and circumstances of each case."Bertoldi v. Bertoldi (Oct. 8, 1997), Summit App. No. 18346, unreported, at 3. An award of spousal support is subject to the discretion of the trial court and will not be reversed absent an abuse of discretion. Schneider v. Schneider (1996), 110 Ohio App.3d 487,494.
This Court previously held that an award of spousal support is "arbitrary" where the trial court based the award on a spouse's ability to secure higher income and there was no evidence to support the amount of income. See, e.g., McEaneney v. McEaneney
(Feb. 2, 2000), Summit App. No. 19555, unreported, at 9; DiLacquav. DiLacqua (1993), 88 Ohio App.3d 48, 60. For example, inMcEaneney v. McEaneney, the trial court imputed income to the wife equating to full-time employment status, contrary to evidence supporting a history of much lower earnings. This Court found that the evidence, which included testimony of previous employers as to total hours worked and respective wage rates, did not support the amount of imputed income. McEaneney v. McEaneney,supra, at 7-8. We held that the trial court "failed to substantiate that [the wife] could achieve the level of income imputed to her," and found the spousal support was arbitrary. Id.
at 9.
In the instant case, Kimberly initially testified that, as bookkeeper for the cleaning business, a total of $30,000 in checks "came through the doors for Quality Systems" during the 1998 calendar year. However, her testimony was inconsistent, as later she testified the amount was actually $45,000. Kimberly also testified as to the family's lifestyle. She stated that since she began working two and a half years ago, the family went out to eat three times per week, took a $3,000 cash vacation each year, and spent $2,000 in cash at Christmas time. She also testified that they currently pay $517 per month to send their children to parochial high school.
The evidence also included joint federal and state income tax returns from 1995-1998, signed by both parties under penalty of perjury. Each indicated gross receipts for the cleaning business ranging from $16,827 to $18,975. Net profits ranged from $1,276 to $5,984 over the same time period. Specifically, the most recent tax return, from 1998, reported $16,827 in gross receipts and $2,484 in net income. Daniel and Kimberly filled out separate financial affidavits, affirmed under oath, indicating the net annual business income was approximately $7,400 (with depreciation added back). Daniel also presented calculations, some of which Kimberly prepared, for the time period of January through August 1999. These computations are consistent with the above mentioned figures regarding gross and net annual business income. Daniel projected that gross income from the cleaning business for 1999 would approximate $20,000.
The trial court imputed additional unreported gross business income to Daniel of approximately $25,000 per year, for a total of $45,000 annual gross income attributed to his cleaning business.[2] According to the Judgment Entry, the trial court based its decision on Daniel's testimony regarding "jobs that he was able to obtain in government for friends and relatives [that] started at $30,000 or more[,]" with no further explanation. Like the McEaneney case, the amount of imputed income in this case is contrary to the evidence which supports a history of lower earnings. Absent the self-serving, contradictory testimony of Kimberly, there is no objective material of evidentiary quality to substantiate the specific level of income imputed to Daniel. The fact that Daniel found jobs for some of his relatives starting at $25,000 to $30,000 does not support the idea that he had the reasonable ability to earn more at a different job than the $20,000 gross income he was making from his cleaning business. If the evidence indicated that Daniel had the ability to make more than his current annual business income of $20,000, the trial court could properly impute that amount, as it would represent his earning ability. See R.C. 3105.18(C)(1)(b). It follows that the trial court acted unreasonably and abused its discretion in imputing $45,000 of income to Daniel from his cleaning business, Quality Systems. Daniel's first and second assignments of error are sustained.
Daniel's three assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
LYNN C. SLABY, FOR THE COURT, BATCHELDER, P. J., BAIRD, J.,CONCUR
[1] Although these monies may be described as an advance upon the death of Mrs. Munger, this future characterization is contingent upon a loan balance being due at that time, as well as upon Daniel receiving a share of her estate under the will.
[2] $45,000 imputed income from cleaning business — $20,000 projected 1999 gross income from cleaning business according to Daniel = Additional imputed gross business income of $25,000.