This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Marlene Morgan has appealed from a judgment decree of divorce entered by the Wayne County Court of Common Pleas. This Court affirms in part, reverses in part, and remands the case for proceedings consistent with this opinion.
 I
Appellant Marlene Morgan and Appellee John Morgan were married on June 24, 1978. Two children were born of the marriage: Amy, who is over the age of eighteen and emancipated, and Carrie, born April 16, 1985. On March 1, 2000, John filed a complaint for divorce, and Marlene responded by filing an answer and counter-complaint for divorce.
For the entire twenty-two year duration of the marriage, John worked for Franklin Oil and Gas Company ("Franklin"), a closely held business under the majority ownership and control of his father, James Morgan. James died on March 8, 2000, one week after John had initiated the divorce proceedings. Upon James' death, John's employment with Franklin was terminated. As a result, John lost his approximately $50,000 annual income and began working part-time for $10 per hour. John also anticipated inheriting approximately $750,000 from his father's estate, although at the time of trial on the divorce action John had received almost nothing from his father's estate.
The parties entered into numerous written stipulations prior to trial on November 6, 2000. On December 5, 2000, the magistrate's report and proposed decision was journalized and provisionally approved by the trial court. Marlene filed objections to the magistrate's report and proposed decision on December 8, and a memorandum in support of objections on December 19, 2000. On February 21, 2001, the trial court journalized its findings of fact and conclusions of law and entered its decree of divorce. Marlene has timely appealed, and has asserted five assignments of error.
 II Assignment of Error Number One The trial court erred and abused its discretion in awarding Marlene spousal support in the amount of $300 per month for 60 months.
In her first assignment of error, Marlene has argued that the trial court erred in awarding her spousal support in the amount of $300 per month for 60 months. Specifically, Marlene has contended that the trial court: (1) failed to consider John's potential investment income on approximately $750,000 he anticipates inheriting from his parents' estates; (2) failed to provide guidelines for invocation of the trial court's continuing jurisdiction over the terms of spousal support; and (3) failed to award Marlene attorney's fees.
This Court will not disturb a trial court's award of spousal support absent an abuse of discretion. Schneider v. Schneider (1996),110 Ohio App.3d 487, 494, appeal not allowed (1996), 77 Ohio St.3d 1416. Abuse of discretion constitutes "`more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
R.C. 3105.18(C)(1) sets forth factors to be considered by a trial court in the exercise of its discretion over the nature and duration of any award of spousal support. Subsection (a) of that statute provides that the court shall consider the income of the parties, including income derived from property allocated by the court pursuant to R.C 3105.171. At trial, Marlene produced testimony by a certified public accountant estimating potential yields on investment of John's anticipated inheritance. Marlene has argued that the trial court abused its discretion in failing to include this potential investment income in its calculation of John's earnings for determining the amount of her spousal support.
John's mother died on September 28, 1999. The parties stipulated prior to trial that the date of death value of John's inheritance from his mother's estate, in cash and stock, approximated $180,000, and was John's separate property. John testified that in 2000, he did not receive any earnings or other income from the stock portion of his inheritance from his mother's estate.
John and Marlene also stipulated that the inheritance John expected from his father was his separate property. Although the taxes and expenses associated with the administration of James' estate made a precise calculation of John's share impossible at the time of trial, both parties estimated the value of John's anticipated inheritance to be approximately $750,000. John testified that of this estimated amount, he had already received value in the amount of $3,500; that he anticipated receiving "some disbursement" in January or February 2001; and that he expected the balance of his inheritance in "a couple of years," after receipt of the federal estate tax closing letter.
As an initial matter, this Court notes that the spousal support award was not for a duration of sixty months, as Marlene has stated; the trial court amended the magistrate's recommendation to extend the duration of the support award to eighty-four months.
Furthermore, the magistrate specifically found that the amount and date of receipt of John's inheritance was uncertain, and any spousal support award based on that inheritance would be speculative. Accordingly, the trial court retained continuing jurisdiction over the spousal support obligation. Upon filing a motion and reviewing John's earnings after his receipt of the anticipated inheritance distributions, therefore, Marlene can at any time seek a modification of the spousal support amount. Under these circumstances, this Court cannot say that the trial court's refusal to consider John's potential investment income in its award of spousal support was unreasonable, arbitrary, or unconscionable.
Nor is Marlene's argument that the trial court erred in failing to establish guidelines for the invocation of its continuing jurisdiction well taken. While the trial court did not order John to continuously disclose or report the receipt of his inheritance distributions, Marlene may at any time move the trial court to revisit the spousal support amount in light of any additional assets that may become available to John through his inheritance.
Finally, Marlene has argued that the trial court erred in failing to consider her attorney's fees in its award of spousal support. Pursuant to R.C. 3105.18(H), a trial court may award reasonable attorney's fees to either party if the other party has the ability to pay. The statute requires the court to consider, in making this determination, "whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." A trial court has broad discretion in determining whether to award attorney's fees and its decision will not be overturned absent an abuse of discretion. Bowen v. Bowen (1999),132 Ohio App.3d 616, 642.
Marlene testified that her father paid her attorney fees, but that a note had not been signed, and that there would be no legal action if she did not repay her father. She also testified that she believed her attorney fees totaled approximately $12,000, but the only evidence she submitted showed an attorney fee amount of $4,217.50. Marlene did not allege, however, that she was prevented from fully litigating her rights and protecting her interests, or that the trial court denied her this opportunity. This Court has held that:
 [T]he payment of attorney fees is primarily the function of the party who retains the attorney. It is not an equal obligation of both parties. While the law allows one party to a divorce under certain conditions to be required to pay for all or some of the other party's legal fees, R.C. 3105.18, the trial court must make the determination equitably and fairly to serve the ends of justice.
Id. at 642. Marlene has failed to show any abuse of discretion by the trial court in its determination that the obligation for attorney's fees incurred by each party is the separate, non-marital debt of each. Marlene's first assignment of error is overruled.
 Assignment of Error Number Two The court abused its discretion and committed error at law to Marlene's prejudice when finding that the Zurich account was marital property then observing it was non-marital property but then distributing it to her entirely but actually end up dividing it equally.
In her second assignment of error, Marlene has argued that the trial court erred in its division of a Zurich Money Market Account ("Zurich Account"). Marlene has contended that the trial court inconsistently characterized the Zurich Account first as separate and later as marital property, and improperly credited her in the division of property with more of the account than she will receive.
The Zurich Account was opened with funds from four separate accounts of $10,000 each that were gifts given by Marlene's father to Marlene, John, and their two children. The parties spent approximately $14,000 of the original $40,000 on various household items. The parties stipulated that the Zurich Account had a remaining balance of $26,112.11.
The magistrate determined that "[t]he nature of the beginning of the accounts would be the separate property" of John, Marlene, and the two children. The magistrate accordingly recommended that the entire account be considered non-marital property, and that $10,000 be distributed to each of the two children and the remaining $6,112 be equally divided between John and Marlene. This distribution scheme was also adopted by the trial court in its decree of divorce and reflected in its findings of fact and conclusions of law. However, the magistrate also refers later in the report and proposed decision to the Zurich Account in the context of dividing the marital assets, and specifies that "[Marlene] would receive * * * the Zurich Investment Account ($6,528)."
Given the inconsistencies in the record, it is impossible for this Court to determine precisely how the Zurich Account was distributed. The trial court abused its discretion and committed prejudicial error by inconsistently characterizing and dividing the Zurich Account. Marlene's second assignment of error is sustained.
 Assignment of Error Number Three The trial court abused its discretion and erred at law to the prejudice of the defendant appellant. Upon failing to find appreciation in the Franklin Oil and Gas Company stock was marital property [sic].
In her third assignment of error, Marlene has argued that the trial court erred in finding that the appreciation on certain shares of stock was John's separate property.
The parties stipulated that during his employment with Franklin, John received a gift of ten shares of Franklin stock. The parties further stipulated that these shares were John's separate property, and that the stock shares would be redeemed as part of the liquidation of Franklin for a total of $113,800, subject to tax consequences. The total value of these shares at the time they were transferred to John was $50,000. The total appreciation before taxes was therefore $63,800.
At trial, the parties presented conflicting interpretations of this stipulation. John testified that he understood the language to provide that the shares of stock and the redemption value constituted his separate property. Marlene, however, testified that the stipulation of separate property pertained only to the $50,000 value of the stock at the time it was gifted to John, and did not include the $63,800 appreciation.
R.C. 3105.171(A)(3)(a)(iii) defines "marital property" as including "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" "Separate property," on the other hand, is defined as including "[p]assive income and appreciation acquired from separate property by one spouse during the marriage[.]" R.C.3105.171(A)(6)(a)(iii). "Passive income" is "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).
The magistrate stated in his report and proposed decision:
 [Marlene] failed to show she actually contributed or assisted in the appreciation of the stock. She failed to show [John] by his employment has anything to do with the appreciation of the stock. If neither party contributed to the appreciation, then the appreciation is certainly passive and non marital. Therefore the weight of the evidence is the entire amount should be considered non marital.
The trial court, in its findings of fact and conclusions of law, further found:
 John has sustained his burden of proof on this issue as the evidence shows that the increase in value of this separate property during the term of the marriage is passive and should be classified as John's separate property.
Marlene has argued that because John was employed by Franklin during the entire 22-year duration of the marriage, the appreciation was "due to" his labor and in kind contribution, and was thus marital property. Marlene's only argument to this Court on this point is that John worked at Franklin, and "[s]ince the growth occurred while working for the business, a court can infer from that fact it was based upon [John's] labor and effort."
John has argued that the appreciation on the Franklin stock is passive income and therefore his separate property. At trial, John presented evidence that James Morgan owned 300 shares of the Franklin stock and made all the business decisions. Marlene testified that "[James Morgan] ran the company," and acknowledged that "[w]hat he said goes[,]" and that "[n]obody questioned what [James Morgan] said or did, and it was something the family lived with." Marlene also stated that John was frustrated with the way he was treated at Franklin. In addition, John's brother and Franklin's other fiduciaries terminated John's employment with Franklin almost immediately after his father's death.
After thoroughly reviewing the record, this Court cannot conclude that the trial court abused its discretion in finding that the appreciation on the Franklin stock was John's separate property. Marlene's third assignment of error is overruled.
 Assignment of Error Number Four The trial court abused its discretion in dividing the marital property equally when in fact such division is not equitable.
In her fourth assignment of error, Marlene has argued that the trial court abused its discretion in dividing the marital property equally. Specifically, Marlene has contended that the trial court failed to consider in its division John's "net $750,000" inheritance or the increase in John's Franklin shares.
Trial courts have broad discretion in equitably dividing property in divorce actions. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. This Court will not disturb a trial court's division of marital property absent an abuse of discretion. Briganti v. Briganti (1984),9 Ohio St.3d 220, 222, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218.
R.C. 3105.171(C)(1) provides:
 [T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
The factors set forth in 3105.171(F) include:
(2) The assets and liabilities of the spouses;
* * *
 (9) Any other factor that the court expressly finds to be relevant and equitable.
Marlene has argued that the trial court failed to consider the inheritance distributions expected by John and the value and appreciation of John's shares of Franklin stock in its division of property. John's anticipated inheritance, however, was stipulated to be John's separate property. The trial court in calculating its distributive awards refused to speculate on the amount of John's anticipated inheritance, or when John might receive his inheritance. Rather, the trial court accounted for the potential availability to John of more assets and investment income in the future by stating that such a change of circumstances may be occasion for revisiting the amount of the child support award and award of the tax dependency credit to John, and by retaining continuing jurisdiction over the amount of the spousal support award. This Court therefore cannot find that the trial court abused its discretion in dividing the marital property equally.
 Assignment of Error Number Five The trial court abused its discretion and committed error at law to the prejudice of the defendant appellant when making an award of child support, ordering an equal division of uninsured medical expenses and awarding the plaintiff appellee the dependency credit for tax purposes.
In her fifth assignment of error, Marlene has contended that the trial court abused its discretion in (1) calculating the amount of child support to be paid by John, (2) ordering that the parties equally divide the minor child's uninsured medical expenses, and (3) awarding John the federal tax dependency exemption.
Marlene has argued that in calculating the appropriate amount under that statute, the trial court failed to consider what Marlene estimates is "$60,000 a year from potential investment income" available to John after he receives his inheritance.
In determining that John should pay Marlene $502 monthly in child support, the trial court utilized John's stipulated earning potential of $35,000.[1] In adopting this figure, the trial court acknowledged that John would no longer be receiving the approximately $50,000 annual income he had been collecting from Franklin, as his employment with Franklin was terminated and the business liquidated. The trial court's findings of fact and conclusions of law specifically addressed Marlene's contention that the court should consider the potential investment income available after John's inheritance distribution:
 There was no evidence of any earnings or investment performance on John's inheritance as of the time of the final hearing; thus, projected additional earnings were speculative. When John receives his separate property distributions, he may have additional assets available to him to make investments and may have additional income which possibly could result in a modified order for child support.
The trial court specifically considered the uncertainty of John's financial position after the termination of his employment with Franklin and the potential investment income available to him after his inheritance distribution. While it determined that any such potential income was too speculative to consider in calculating a child support amount, the trial court did specify that any income from additional assets John might receive could form the basis for a modification of the child support order. Accordingly, this Court cannot say that the trial court abused its discretion in using the stipulated $35,000 earning potential in calculating its child support award. Marlene's first argument is not well-taken.
Marlene has further contended that the trial court erred in ordering the parties to equally divide their daughter Carrie's uninsured medical expenses. Specifically, Marlene has argued that the parties should have shared the responsibility on a pro rata basis, with Marlene responsible for one-sixth of the expenses and John liable for the remaining five-sixths. This division of the expenses, Marlene has argued, would account for the disparity in incomes and assets, factoring in John's expected inheritance.
"Extraordinary medical expenses" are any uninsured medical expenses for a child that exceed one hundred dollars during a calendar year. R.C.3113.215(A)(12). The division of extraordinary medical expenses is within the discretion of the trial court. Hutchinson v. Hutchinson (May 29, 1998), Greene App. No. 97-CA-40, unreported, 1998 Ohio App. LEXIS 2322, at *21.
As this Court has already noted, the trial court rejected as too speculative the inclusion of any potential investment income from John's inheritance in calculating the parties' incomes for purposes of support awards. Moreover, the parties stipulated prior to trial that John's earning potential was "approximately $35,000 annually," and that Marlene expected to earn a total of approximately $16,000 by the end of 2000. Even this $35,000 amount, John has pointed out, represents only John's stipulated earning potential; at the time of the final hearing John still had not secured full-time employment, and was working only part-time for ten dollars per hour. Accordingly, this Court finds that the trial court did not abuse its discretion in ordering the parties to equally divide the responsibility for their daughter's uninsured medical expenses. Marlene's second argument also must fail.
Lastly, Marlene has challenged the trial court's award to John of the dependency credit for tax purposes.
This Court reviews a trial court's allocation of dependency exemptions between parents under an abuse of discretion standard. Eickelberger v.Eickelberger (1994), 93 Ohio App.3d 221, 225-26. A trial court may award the dependency exemption to a non-custodial parent, however, only if it finds that doing so serves the best interests of the child. Bobo v.Jewell (1988), 38 Ohio St.3d 330, 332. The best interests of the child may be furthered where the non-custodial parent's taxable income falls into a higher tax bracket than the custodial parent's taxable income.Singer v. Dickinson (1992), 63 Ohio St.3d 408, 415-16. In evaluating these potential tax savings, "a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at 416.
In this case, the magistrate concluded:
 With regard to the tax dependency, the worksheet prepared by the Magistrate shows that [John] will pay approximately 69% of the total support for the minor child. The Magistrate is also aware that when [John] receives the estate distribution he will have assets available to make investments and will have additional investment income which could result in * * * John achieving income which would phase out the benefit of the tax dependency. Until that occurs, the Magistrate would recommend [John] receive the benefit of the minor child for tax purposes. Presumably if the adult child is in college [Marlene] would still have the ability to claim her as a dependent on her taxes. The award at this time would be in the minor child's best interest based upon the income figures used by the court for support calculation. * * * [T]ax dependency can be reviewed by the court at the request of either party upon a change of circumstance.
The worksheet to which the magistrate referred utilized the stipulated earning potential of $35,000 for John and $16,000 for Marlene in calculating the parties' gross incomes. The magistrate's order accounted for the possibility of John receiving more income through his inheritance by providing that either party can request a review of the dependency allocation upon a change of circumstance. Accordingly, Marlene has failed to show any abuse of discretion by the trial court in its award of the dependency credit to John. Her third argument is also without merit.
 III
Marlene's second assignment of error is sustained; her remaining assignments are overruled. The judgment of the trial court is reversed in part and the cause remanded for the limited purpose of dividing the assets of the Zurich Account.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
SLABY, P.J., CARR, J. CONCUR.
[1] R.C. 3113.215 was repealed effective March 22, 2001. R.C. 3119.01et seq. now includes the relevant sections pertaining to the matters at issue in this case.