OPINION
{¶ 1} Yanjun Wan appeals from a judgment of the domestic relations division of the Montgomery County Court of Common Pleas, which issued a divorce decree incorporating the parties' separation agreement.
 {¶ 2} Wan and Carol Zamonski were married in Cook County, Illinois on April 8, 1999. They separated in October of 2000. At the time of the separation, Zamonski was pregnant with the couple's only child, Amelia Rae Zamonski, born May 2, 2001. Following the birth of Amelia, Zamonski filed a complaint for legal separation, which she amended to a complaint for divorce in August of 2001. A final hearing was set for December 6, 2001, but it was delayed by a petition for conciliation filed by Wan. In January of 2002, Wan filed a counterclaim for legal separation, which was later modified to a counterclaim for divorce. On March 18, 2002, Zamonski filed a second amended complaint for divorce adding the ground that the parties had lived apart for more than a year. The final hearing was held on April 30, 2002. The parties had reached a settlement agreement, which was read into the record at the hearing. The terms of the agreement were incorporated into the divorce decree, which was filed on May 16, 2002.
 {¶ 3} Wan appeals, raising two assignments of error.
"I. THE TRIAL COURT ERRED IN APPROVING AND INCORPORATING THE SETTLEMENT AGREEMENT INTO THE DIVORCE DECREE SINCE THERE WAS NO MEETING OF THE MINDS OR INFORMED CONSENT AS TO THE TERMS OF THE AGREEMENT."
 {¶ 4} Wan argues that the settlement agreement was invalid, and that the trial court consequently abused it discretion in incorporating it into the divorce decree, because there was no meeting of the minds or informed consent. He argues that he is Chinese and has only a cursory understanding of English and no understanding of the law and that he simply did not understand the terms of the settlement agreement when he agreed to them.
 {¶ 5} A trial court's approval of a separation agreement and incorporation of the agreement into a divorce decree is reviewed for abuse of discretion. See Schneider v. Schneider (1996),110 Ohio App.3d 487, 491, 674 N.E.2d 769. Abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 6} A separation agreement is a contract, and theories of contract law govern its validity. See Van Hoose v. Van Hoose (Apr. 7, 2000), Champaign App. No. 99 CA 18, citing Spercel v. Sterling Indus.,Inc. (1972), 31 Ohio St.2d 36, 285 N.E.2d 324. Such settlements are favored in the law. See id., citing Walther v. Walther (1995),102 Ohio App.3d 378, 383, 657 N.E.2d 332. "Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement." Id.
 {¶ 7} Wan argues that the separation agreement was invalid because there was no meeting of the minds or informed consent. He contends that he does not have a good understanding of English or the legal system and that he did not understand the terms to which he was agreeing. He further argues that his lack of understanding should have been readily apparent to the trial court given that the agreement heavily favored Zamonski. We disagree.
 {¶ 8} First, the record does not support Wan's contention that he did not understand the agreement. He was represented by counsel during the process of working out the separation agreement and at the final hearing. During the hearing, Wan's counsel clarified various points regarding the agreement as it was read into the record and indicated that the provisions were as agreed by the parties. Furthermore, the transcript of the final hearing establishes that Wan understood what was happening. The court questioned him at length regarding whether he understood the provisions of the separation agreement and agreed to them. When asked if he agreed to the provisions read into the record, Wan answered, "Yes, I agree totally." The colloquy then proceeded as follows:
 {¶ 9} "THE COURT: Are there any additions, corrections, or misstatements you'd like to clarify for the record?
 {¶ 10} "THE DEFENDANT: No. If I want to take the baby out of the country I will ask the Court's permission first.
 {¶ 11} "* * *
 {¶ 12} "THE COURT: * * * Despite the fact you have an attorney today, have you really thought about what you're doing?
 {¶ 13} "THE DEFENDANT: Yes.
 {¶ 14} "THE COURT: Do you understand how serious this matter is?
 {¶ 15} "THE DEFENDANT: Yes. We are all very serious about it.
 {¶ 16} "THE COURT: Do you find that this agreement is in your best interest?
 {¶ 17} "THE DEFENDANT: Yes, I do.
 {¶ 18} "THE COURT: Do you find that this agreement adequately provides for the care, custody and support of your minor child?
 {¶ 19} "THE DEFENDANT: Yes, I do.
 {¶ 20} "THE COURT: Has anybody forced or threatened you in any way to —
 {¶ 21} "THE DEFENDANT: No.
 {¶ 22} "THE COURT: To get you to enter into this agreement?
 {¶ 23} "THE DEFENDANT: No.
 {¶ 24} "THE COURT: Do you understand, sir, that once you say this is, in fact, your agreement, you will be bound by the terms and conditions of this agreement, and the Court won't go back and undue [sic] an agreement that you enter into today. Do you understand that?
 {¶ 25} "THE DEFENDANT: Yes, I do.
 {¶ 26} "THE COURT: Knowing this, are you asking this Court to adopt this agreement, and incorporate it into a final Judgment and Decree of Divorce?
 {¶ 27} "THE DEFENDANT: Yes, I do."
 {¶ 28} This exchange demonstrates that Wan understood that he was agreeing to the terms of the separation agreement, which had been read into the record. Further, Wan's responses were articulate and demonstrate that his grasp of English was sufficient for him to understand what the judge was asking. From the record before us, we see no evidence that Wan failed to understand the questions asked by the court or the terms of the separation agreement. Especially considering that he was represented by counsel and makes no argument that that representation was inadequate, we will not presume that he did not understand what he was agreeing to simply because he is Chinese and has had limited contact with the American court system.
 {¶ 29} Wan also asks us to presume that he did not understand what he was agreeing to because he argues that no one who understood the terms of the separation agreement would have agreed to them. He points to the provisions stating that he will have supervised visitation with his daughter for three years and that he will successfully complete the Asian Men's Batterer's Group Program in Chicago. He argues that the provisions were completely unsupported by the evidence and that he would never have agreed to them had he understood them. On the contrary, there is some explanation for these provisions in the record before us. Zamonski had filed a petition for a domestic violence civil protection order and received an ex parte order. Wan had apparently agreed in a prior proceeding that he would complete the batterer's program if he sought visitation with the parties' daughter. Further, Zamonski stated on the record her concern that Wan would take their daughter to China and she would have no recourse to have the child returned to her. Thus, it should not have been evident to the court, which had more information regarding these issues than we have in the record before us, that the provisions strongly favored Zamonski or that Wan would not have agreed had he understood.
 {¶ 30} Wan also argues that the trial court should have been alerted that he did not understand the provisions of the separation agreement by the unfairness of the property distribution. He contends that the distribution was made entirely according to a list prepared by Zamonski and that she received all but two of the items on the list. He also argues that the child support award was based solely upon figures provided by Zamonski. Again, the record does not support Wan's contentions. Rather, it is apparent from the record that the list prepared by Zamonski dealt with only a portion of the parties' possessions and that most of the items on the list were Zamonski's premarital property. Zamonski received everything on this list except for two items that Wan objected to her receiving, a video cassette recorder and a mattress set. We have difficulty believing that Wan was unable to understand a list of his and Zamonski's belongings, all of which were in his possession throughout the divorce proceedings. Furthermore, Wan received much more than the two items off that list. The separation agreement provided that, aside from the items on the list that Zamonski was to receive, the parties would retain the marital property in their possession. Wan remained in the marital premises and thus received everything that Zamonski had left behind that was not on her list.
 {¶ 31} With regard to the child support calculations, we note that Wan signed the worksheet calculating child support. Furthermore, he does not argue that the calculations were inaccurate. Rather, he argues that they were based solely on figures provided by Zamonski. From the record, it appears that Zamonski, who is self-employed, actually makes less than the $15,000 she entered on the worksheet; however, she volunteered to have $15,000 of income imputed to her for the purposes of negotiating a child support payment in the settlement agreement. At the hearing, she offered to exchange tax statements, but the court and Wan's attorney declined. Therefore, we see no imbalance in the child support calculations or the property distribution that leads us to conclude that Wan would never have agreed to them if he had understood them.
 {¶ 32} Accordingly, we reject Wan's arguments that the settlement agreement was invalid because there was no meeting of the minds or informed consent. The record reflects that Wan understood the terms of the agreement and that those terms were fair. Furthermore, Wan was represented by counsel, and he makes no argument that his counsel failed to explain the provisions of the separation agreement to him. In any case, such an argument would not be appropriately made in this appeal.
 {¶ 33} The first assignment of error is overruled.
"II. THE TRIAL COURT ERRED IN APPROVING AND INCORPORATING THE SETTLEMENT AGREEMENT INTO THE DIVORCE DECREE SINCE THE AGREEMENT AS A WHOLE WAS INEQUITABLE AND CONTRARY TO LAW."
 {¶ 34} Under this assignment of error, Wan argues that the trial court failed to ensure that the settlement agreement was fair and equitable and failed to comply with various statutes in incorporating the settlement agreement into the divorce decree.
 {¶ 35} Wan makes many of the same arguments as above in contending that the separation agreement was not fair and equitable. We note that a separation agreement does not have to be fair and equitable to be enforceable so long as it was not procured by fraud, duress, overreaching, or undue influence and there is no factual dispute regarding the terms. See Walther, supra, at 383. We have already concluded that the separation agreement was valid. In any case, the various provisions were fair and are supported by the record. Wan argues that there was no evidence to support a provision requiring him to complete the batterer's program, yet the record reveals that Zamonski had obtained an ex parte civil protection order against him. Wan argues that there was no evidence that he was a danger to his daughter; but the record contains Zamonski's concerns that Wan would take the child to China, and Amelia was also a protected party under the civil protection order. The provisions for child support and the division of marital property were likewise fair. In any case, Wan agreed to these provisions and specifically stated that he believed them to be in his best interest. We cannot conclude that the trial court failed to ensure that the settlement agreement was fair and equitable prior to incorporating it into the divorce decree.
 {¶ 36} Wan further argues that the court failed to comply with various statutes governing visitation, R.C. 3109.051, child support, R.C. 3119.05, and division of marital property, R.C. 3105.171. However, Wan agreed to the visitation, child support, and property division incorporated into the divorce decree. Given his agreement, the court was not required to engage in a consideration of all the facets of these statutes.
 {¶ 37} The second assignment of error is overruled.
 {¶ 38} The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.