OPINION
{¶ 1} Defendant-appellant, Catherine L. Kohus, appeals the decision of the Clermont County Common Pleas Court, Domestic Relations Division, dividing property in a divorce proceeding against plaintiff-appellee, Louis Albert Kohus. We affirm the trial court's decision.
 {¶ 2} Catherine and Louis were married on July 7, 1984. No children were born of the marriage. Beginning in 1994, Catherine spent nine to 11 months a year residing in Florida. Louis remained in Ohio.
 {¶ 3} Louis filed for divorce on July 6, 2000. A hearing was held before a magistrate in October 2001 and a decision issued on December 4, 2001. On December 17, 2001, Catherine filed objections to the magistrate's decision. On April 9, 2002, the trial court overruled the objections. A final decree of divorce was rendered on June 10, 2002. Catherine appeals, raising three assignments of error.
Assignment of Error No. 1
 {¶ 4} "The trial court erred in finding that the term `during the marriage,' was from July 7, 1985 through January 1, 1999."
 {¶ 5} Pursuant to R.C. 3105.171(A)(2)(a), the phrase "during the marriage" is presumed to run from the date of the marriage through the date of the final divorce hearing. However, if the trial court determines that the use of either or both of these dates would be inequitable then "the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b). "The decision to use another alternative date pursuant to R.C. 3105.171(A)(2)(b) is discretionary and will not be reversed on appeal absent an abuse of discretion." Doermanv. Doerman, Butler App. No. CA2001-03-071, 2002-Ohio-3165, citingSchneider v. Schneider (1996), 110 Ohio App.3d 487, 493. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1993), 5 Ohio St.3d 217, 218 and 219.
 {¶ 6} Catherine was essentially living in Florida. Beginning in 1994, Catherine spent nine to 11 months a year residing in Florida. Louis remained in Ohio.
 {¶ 7} Catherine testified that she opened credit accounts for only herself while in Florida. Although Catherine was still a registered voter in Clermont County, Ohio, her Florida address was listed on her voter registration card. Catherine changed the address on her magazines to the Florida address.
 {¶ 8} When Catherine began traveling to Florida, the parties continued to share some financial responsibilities. Catherine paid the utilities, and homeowner's and car insurance for the Ohio residence. However, by the end of 1997, Catherine stopped paying the utilities. By the end of 1998, she discontinued regularly paying for the homeowner's and car insurance, making one insurance payment in 1999 and two in 2000.
 {¶ 9} Considering all of the evidence, the trial court's use of the January 1999 date as the de facto termination of the marriage was not an abuse of discretion. By 1999, the parties were essentially living separate lives both geographically and financially. Further, the trial court credited Catherine for the three insurance payments she made in 1999 and 2000. Catherine's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 10} "The trial court erred in determining that husband's uncorroborated testimony, based upon hearsay, established a separate interest in the parties' residence."
 {¶ 11} Catherine maintains that Louis improperly testified as to the value of the home at the time of the marriage. She also argues that Louis has not proven that he maintained a separate interest in the home.
 Value of Home {¶ 12} An owner of property may opine as to the value of his property because he is presumed to be familiar with the property's value from having purchased or dealt with it. Tokles Sons, Inc. v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 626.
 {¶ 13} During his deposition, Louis testified that the value of the home was $48,000 at the time of his marriage to Catherine. During the hearing, he testified that the home was worth $59,500 at the time of his marriage. Louis's attorney followed his testimony with a question of whether "that [amount is] based upon anything in particular other than your own opinion." Louis replied "[a]n appraisal by —." Catherine's attorney immediately objected to Louis's testimony, stating that he was basing it on a document that was not an appraisal and not admitted into evidence and therefore hearsay. Louis's attorney responded that "[i]t's just a basis for his opinion other than his own personal knowledge." Catherine's attorney then objected on the basis of hearsay, but stated "[h]e's entitled to his own opinion —." The magistrate stated "I'm going to sustain the objection if it's based on the appraisal."
 {¶ 14} The magistrate related in its opinion that neither party presented expert testimony as to the value of the home at the time of the marriage, and Catherine did not testify as to her opinion of the value of the home. The magistrate then used $59,500 as the value of the home at the time of the marriage.
 {¶ 15} It was not error for the magistrate to use the $59,500 figure to value the home at the time of the marriage. This was Louis's opinion as to the value, and as the owner of the home, he is permitted to opine as to its value. Id.
 Separate v. Marital Property {¶ 16} Catherine maintains that Louis's premarital interest in the home is not traceable. She contends that the refinancing of the home converted Louis's separate interest into marital property.
 {¶ 17} R.C. 3105.171(B) requires the trial court to determine "what constitutes marital property and what constitutes separate property." We review the classification of property as marital or separate under a manifest weight of the evidence standard. Johnson v. Johnson
(Sept. 27, 1999), Warren App. No. CA99-01-001. Under such review, the trial court's factual findings relating to classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." Id. The trial court's property award will not be reversed absent an abuse of discretion. Barkley v. Barkley
(1997), 119 Ohio App.3d 155, 159.
 {¶ 18} "Marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[,]" and "[a]ll interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage[.]" R.C.3105.171(A)(3)(a)(i) and (ii).
 {¶ 19} "`Marital property' does not include any separate property." R.C. 3103.171(A)(3)(b). "Separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C.3105.171(A)(6)(a)(ii). The commingling of separate and marital property does not destroy the identity of the separate property unless it is not traceable. R.C. 3105.171(A)(6)(b). Holding title to property by one spouse individually or by both spouses does not determine whether that property is marital or separate. R.C. 3105.171(H). "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
 {¶ 20} A review of the record shows that both Catherine and Louis agree that Louis bought the property in 1979 for $39,000. Catherine disputes the finding of the value of the home to be $59,500 at the time of the marriage. As stated earlier, as a property owner, Louis may testify as to the value of his property and therefore it was not error for the trial court to use the $59,500 figure in determining Louis's premarital interest in the property. This gives Louis a separate $20,500 premarital interest in the property.
 {¶ 21} After the marriage, Louis placed the deed in both his and Catherine's names. Catherine argues that this act coupled with refinancing the property twice during the marriage causes Louis's separate interest to be untraceable. Separate, non-marital money used by one party to purchase property can remain traceable even when the property is jointly titled. See Yeary v. Yeary (May 22, 2000), Brown App. No. CA99-07-023. Furthermore, refinancing a home after a marriage does not convert separate property into marital property where the mortgage was not used to finance the purchase of the residence. See Nuding v.Nuding (Dec. 7, 1988), Mercer App. No. 10-97-13.
 {¶ 22} Louis first refinanced the home in order to build an addition onto the home and pay off credit card debt. He refinanced the home the second time in order to pay off the first and second mortgage and pay off credit card debt. Louis has introduced evidence through his testimony as to the value of the property at the time of his marriage as well as the value of the property at the time of its purchase. The trial court did not abuse its discretion when determining that Louis maintained a separate premarital interest in the property of $20,500. Catherine's second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 23} "The trial court erred in allocating $101,365 in marital debts solely to wife without a corresponding offset to equalize the debt with husband."
 {¶ 24} Catherine maintains that the credit card debt and loans her son made to her are marital debt and should be shared equally between she and Louis.
 {¶ 25} The trial court is vested with broad discretion in establishing an equitable division of marital property in a divorce action. Middendorf v. Middendorf, 82 Ohio St.3d 397, 401, 1998-Ohio-403. "Appellate courts should not review discrete aspects of the property division out of context of the entire award." Baker v. Baker (1992),83 Ohio App.3d 700, 701-02. Instead, we should consider whether the trial court's disposition of marital property as a whole results in an inequitable property division. Id. We may modify a property division only upon a finding that the trial court abused its discretion in dividing the property as it did. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
 {¶ 26} The magistrate ordered each party to pay their own debt. Catherine objected to the finding. The trial court found that the magistrate's decision was supported by the evidence presented and overruled the objection.
 {¶ 27} All of the credit card debts were paid off in 1992 with funds from the refinancing of the home. The current credit card debt was incurred in each party's separate name. Beginning in 1994, Catherine spent nine to 11 months of the year in Florida with her son. Catherine helped with the utilities and insurance of the Ohio home while Louis paid the mortgage, but each party paid their own personal expenses. Catherine incurred more than $53,000 in credit card debt. The magistrate stated that "[m]any of [Catherine's] charges were for eating at restaurants, hair appointments, groceries, gasoline, clothing, and other charges solely for the benefit of [Catherine]."
 {¶ 28} Catherine's son claims that he has made $48,000 in loans to help in her living expenses. He compiled a list of all expenses for groceries, dining and other expenses, notating who owed whom what monies. He admitted during cross-examination at the oral hearing that he took his mother in because of his love and affection for her. Catherine admitted buying items for her son including a computer for which she charged. She also used other charge cards to buy items that are located at her son's home.
 {¶ 29} As the magistrate stated in its decision, Louis and Catherine "were, essentially, with the exception of maintaining the marital residence, living separate lives, both physically and financially." These credit card debts and alleged loans were not for a marital benefit. Considering all of the evidence presented, we find that the trial court did not abuse its discretion in ordering each party to pay their separate debt. Catherine's third assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.