DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division. In its judgment, the trial court granted a divorce to appellee/cross-appellant, Ida P. Beran, and to appellant/cross-appellee, Gerald S. Beran, distributed the marital property of the parties, and ordered Gerald to pay spousal support to Ida. The following relevant facts were adduced at the hearings held before a magistrate.
 {¶ 2} Gerald and Ida were married on June 12, 1981. The parties had two children; one child was emancipated at the time Ida filed her complaint seeking a divorce. The other child was a minor, but turned 18 before the final judgment of divorce was entered.
 {¶ 3} Ida worked as a police dispatcher, both part-time and full-time, until 1986. She was paid the minimum wage. After that point, and by agreement of the parties, she primarily worked as homemaker and caretaker for the parties' children. At the time of the hearing on this matter, Ida was 40 years old and had no health problems. In August 2001, she started attending Owens Community College. After completing two years at Owens, Ida plans on transferring to Bowling Green State University to complete her four year degree in Computer Science.
 {¶ 4} When she filed her complaint for divorce on July 23, 2001, Ida was 39 years old. She resided in the marital home until it was sold shortly before the divorce hearing. Ida testified that she now lives alone in an apartment. Her rent for the first six months is $685 per month. If she remains in that apartment after six months, her rent will be $795 per month. Ida also pays $65 for a storage unit. Her cost for attending Owens Community College is $78 per credit hour, plus the cost of books and parking fees. The cost of attending Bowling Green State University is approximately $7,200 per year. Ida stated that, due to the fact that she needed to "catch up" in her schooling, she would not graduate for four or five years.
 {¶ 5} Ida's other expenses include $440 per month for food, approximately $250 per month for utilities and telephone service, $216 per year for renter's insurance, approximately $200 per month for health insurance (COBRA), $115 per month for motor vehicle insurance, $100 per month for gasoline, and $100 for clothing. At the time of the divorce hearing, Ida also had a credit card ("Visa") balance of $9,633.25. It is undisputed that most of this debt was incurred because appellant closed all of the parties' personal accounts. Ida, therefore, used the Visa to pay for living expenses for herself and her then minor daughter during the period between the time that Gerald left the marital residence and the date the court ordered him to pay temporary spousal and child support. Ida also owed her divorce attorney $9,885.93.
 {¶ 6} At the time of the divorce hearing, Gerald was 39 years old. He was employed at Transco Railway Products, Inc. ("Transco") as a division manager, earning a base pay of $60,480. However, Gerald also earns "discretionary bonuses" each year. Thus, his wage for the year 1999 was $84,400.95; for the year 2000, it was $78,002.79; and for the year 2001, it was $76,068.32. He earned a discretionary bonus in the year 2002 to be paid out as follows: 50 percent in June 2002, 30 percent in 2003, and 20 percent in 2004. Gerald has a pension/profit sharing trust through Transco with a value, as of March 31, 2002, of $119,261.89.
 {¶ 7} Gerald's living expenses are approximately $1,731 per month. He takes medications for hypertension, a lumbar condition, an anxiety disorder, and an elevated cholesterol level (hypolipidemia). Gerald's medical conditions do not interfere with his ability to work 60 to 80 hours per week.
 {¶ 8} On January 3, 2003, the magistrate filed her decision. That decision was journalized on January 6, 2003. On January 16, 2003, Gerald filed a timely objection to the magistrate's decision, requested an extension of time in which order a transcript of the hearings held before the magistrate and to set forth specific objections and moved for a stay of judgment. On January 17, 2003, Ida also filed timely objections to the magistrate's decision. Once the transcripts of the proceedings before the magistrate were filed, both parties filed specific objections to her findings of fact and conclusions of law. Gerald also asked the court to include findings of fact and conclusions of law in its judgment.
 {¶ 9} On August 20, 2003, the trial court filed its final judgment. In that judgment, the court divided and distributed the marital assets and debts of the parties, ordered Gerald to pay spousal support for a period of six years, addressed the issue of a $12,032.76 arrearage owed by Gerald on the court's temporary orders, and awarded Ida $2,000 in attorney's fees. Gerald appeals and sets forth the following assignments of error:
 {¶ 10} "The trial court erred on June 19, 2003 when it apportioned credit card debt that consisted of living expenses of the appellant [sic] incurred by the appellee [sic] subsequent to the spousal support order,"
 {¶ 11} "The trial court erred by refusing to allow appellant a credit against the temporary spousal support award."
 {¶ 12} "The award of spousal support to the appellee in the sum of $2,800.00 per month for fifty [sic] months and $2,000.00 thereafter for twenty-four months was an abuse of discretion."
 {¶ 13} Ida cross-appeals and contends that the following errors occurred in the proceedings below:
 {¶ 14} "The trial court erred in awarding attorney fees to the appellee."
 {¶ 15} "The trial court erred when it failed to order a valuation date for the Transco profit sharing plan, consistent with its specific findings of fact."
 {¶ 16} "The trial court erred when it made a limited $2,000 award of attorney fees to appellee, Ida Beran."
 {¶ 17} "The trial court erred by not ordering the appellant to pay his ordered portion of the First USA Visa debt from the proceeds that he received from the sale of the parties' residence."
 {¶ 18} Before any discussion of Gerald's assignments of error, we must note that in those assignments he maintains that the magistrate's decision, not the trial court's judgment, is deficient in various respects. In the present case, our review is limited to the trial court's judgment, not the interim decision of the magistrate. See Section 3(B)(2), Article IV, Ohio Constitution and R.C. 2505.02. Hence, in this cause, we will review Gerald's assignments of error as they relate to the court's final judgment only.
 {¶ 19} In his first assignment of error, Gerald maintains that the trial court abused its discretion in ordering him to pay one-half of the Visa debt incurred by Ida during the pendency of the divorce proceedings. He argues that it is undisputed that a portion of these expenses were incurred after the temporary order for spousal support in the amount of $3,000 per month was entered.
 {¶ 20} Upon granting a divorce, a domestic relations court is required to divide and distribute the marital property. Holcombv. Holcomb (1989), 44 Ohio St.3d 128, 130. The property to be divided in a divorce proceeding includes not only the assets owned by the parties, but also any debts incurred by the parties.Marrero v. Marrero, 9th Dist. No. 02CA008057, 2002-Ohio-4862 at ¶ 43. A court is vested with broad discretion in formulating an equitable distribution of that property/debt. Berish v. Berish
(1982), 69 Ohio St.2d 318, 319. Thus, the trial court's distribution of marital property will not be disturbed on appeal unless the trial court abused its discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. An abuse of discretion is more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 21} In the present case, Gerald left the family residence on June 8, 2001. The balance owed on the Visa at that time that was $2,026.98. At the divorce hearing, the evidence showed that the amount owed was $9,633.25, an increase of over $7,000. The evidence also established, however, that when Gerald moved out, he withdrew the funds from the parties' joint accounts, closed those accounts, and cancelled all of the parties' credit cards. Ida had only the Visa in her name to support herself and her then minor daughter until after August 30, 2001, the date that the trial court ordered Gerald to pay temporary spousal support. Her bills included a house payment ($1,133.78 per month), utilities, food, and an unexpected $3,600 expenditure when the parties' daughter "totaled" her car.
 {¶ 22} Based on the foregoing, we cannot say that the trial court's attitude in ordering Gerald to pay one-half of the amount owed on the Visa was arbitrary, unreasonable, or unconscionable. Accordingly, Gerald's first assignment of error is found not well-taken.
 {¶ 23} Gerald's second assignment of error challenges the trial court's denial of his request for certain credits on his temporary spousal support arrearage. Gerald first alleges that after October 2001, Ida did not have a payment on her motor vehicle. Therefore, he argues that he should have received a credit of $341.59 from November 1, 2001 until August 20, 2003, the date the trial court entered its final judgment. Gerald also asserts that he should have received credit on his temporary spousal support arrearage for the monthly mortgage payment on the marital residence because it was sold on October 9, 2002 and his temporary spousal support, which included the mortgage payment, continued until the date of final judgment, August 30, 2003.
 {¶ 24} Although Gerald moved out of the marital residence on June 8, 20001, the magistrate did not order him to pay temporary spousal support until August 30, 2001. At
 {¶ 25} that time, Gerald was ordered to pay Ida $3,000 per month in temporary spousal support. There is no indication in the magistrate's order that the amount of temporary support was based upon Ida's monthly expenses. Furthermore, Gerald never filed a motion to modify the amount of the temporary support order. Instead, he raised this issue when he filed his objections to the magistrate's report. The trial court refused to allow the credits for the aforementioned items, holding:
 {¶ 26} "The Court declines to [retroactively] reduce the temporary spousal support awarded due to a diminuition of Wife's expenses subsequent to the temporary order due to the fact that the spousal support was not based solely on Wife's needs, but also took into consideration the fact that the Husband was the sole wage earner and it was appropriate to divide the marital income."
 {¶ 27} Civ.R. 75(N) provides, in relevant part:
 {¶ 28} "(1) When requested in the complaint answer or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or a magistrate, without oral hearing and for good cause shown, may grant spousal support pendente lite to either of the parties for the party's sustenance and expenses during the suit * * *.
 {¶ 29} "(2) * * * Upon request, in writing, after any temporary spousal support order * * * is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary Order. A request for an oral hearing shall not suspend or delay the commencement of spousal support * * * until the order is modified by journalentry after the oral hearing." (Emphasis added.)
 {¶ 30} As previously stated, Gerald failed to file a motion to modify the award of temporary spousal support. Therefore, he waived any right to a credit for the alleged overpayment of spousal support on his arrearage. Wichman v. Wichman (Mar. 22, 1996), 2nd Dist. No. 95 CA 31. Moreover, it is clear from a reading of Civ.R. 75(N), that the decision to award temporary spousal support during a divorce proceeding and the amount to be awarded is a matter within the discretion of the domestic relations court. See, also, Douglas v. Douglas, 2nd Dist. No. 2002-CA-91, 2003-Ohio-2518 at ¶ 22. In denying Gerald's request, the trial judge clearly stated that the award of temporary spousal support was not based solely on Ida's reported expenses. Consequently, we find that the trial court's judgment on this issue is not arbitrary, unreasonable or unconscionable.
 {¶ 31} Gerald also claims that the evidence at trial established that Ida failed to make the last two mortgage payments on the marital residence; therefore, a total of $2,300 should be credited against his arrearage. At the divorce hearing, Ida testified that it was only the last mortgage payment due before the closing on the marital residence that was delinquent. According to Ida, this occurred because the closing was delayed for ten days, and the mortgage company received that amount in the "payoff" at the closing. Ida admitted that she used the mortgage payment for deposits and moving expenses.
 {¶ 32} On the question of whether Gerald was entitled to a credit in the amount of the last mortgage payment, we conclude that based on the facts adduced at trial, the denial of Gerald's request was unreasonable. In particular, Ida acknowledged that she did not make that payment and that it was paid out of the proceeds from the sale of the marital residence. Half of those proceeds were awarded to Gerald. Thus, not only did he provide the mortgage payment, the amount of funds he received after the sale of the house was diminished. As a result, the trial court abused its discretion in failing to give Gerald a credit of $1,133.78 against his arrearage. Gerald's second assignment of error is found not well-taken, in part, and well-taken, in part.
 {¶ 33} In his third assignment of error, Gerald contends that the trial court abused its discretion by awarding Ida an excessive amount of spousal support. Therefore, he concludes that the award of spousal support was not appropriate and reasonable under the circumstances. Gerald further asserts that the court below failed to make mandated specific findings of fact to support the award of spousal support.
 {¶ 34} A trial court has broad discretion in determining whether to award spousal support. Vanderpool v. Vanderpool
(1997), 118 Ohio App.3d 876, 879. The amount of a support award is also a matter within the discretion of the court. Moore v.Moore (1992), 83 Ohio App.3d 75, 78. A reviewing court will not substitute its own judgment for that of the trial court unless, when considering the totality of the circumstances, it determines that the trial court abused its discretion. Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222. To reiterate, a finding of abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore, 5 Ohio St.3d at 219.
 {¶ 35} Any grant of spousal support is dependent upon the trial court's determination that support is reasonable and appropriate. R.C. 3105.18(C)(1). "[I]n determining the nature, amount, and terms of payment and the duration of spousal support * * *," the trial court must consider a number of relevant factors.[1] The court is not, however, required to state findings of fact related to each and every factor. Rather, trial courts are required to consider the statutory factors "and indicate in the final decree of divorce the underlying basis for the award in sufficient detail to enable an appellate court to determine whether the award was appropriate." Schneider v.Schneider (1996), 110 Ohio App.3d 487, 494, citing Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 96-97.
 {¶ 36} In its judgment entry, the trial court specifically stated:
 {¶ 37} "(4) Pursuant to R.C. 3101.18 [sic], it is reasonable and appropriate to award spousal support to Wife based on her loss of income since Wife has not been employed fulltime since 1986 due to her responsibilities as a wife and mother by agreement of the parties; Wife's need for additional training to enter [the] job market and the cost of education for approximately four years; Wife's employment history; Husband's retirement [pension] and Wife's lack of retirement [pension]; the twenty-one year term of the marriage; and the parties' ages."
 {¶ 38} Additionally, the lower court set forth several findings of fact related to the pertinent factors. Therefore, the court's judgment contains sufficient detail to allow this court to determine whether the award of spousal support is appropriate and reasonable. Based upon that review, we find that the trial court did not abuse its discretion in awarding Ida appropriate and reasonable spousal support, and Gerald's third assignment of error is found not well-taken.
 {¶ 39} In his fourth assignment of error, Gerald contends that the trial court erred in awarding Ida $2,000 in attorney's fees. In particular, Gerald urges that Ida failed to demonstrate: (1) that she could not fully litigate her rights without an award of attorney's fees; and (2) the reasonableness of the attorney's fees. The total of the attorney's fees owed by Ida is $9,885.93.
 {¶ 40} Because they were decided prior to the effective date of R.C. 3105.18(H),[2] we decline to apply the holdings in the cases cited by the parties in their arguments in support of and contra to the trial court's award of attorney's fees. Instead, we look to those cases that expressly applied the statute for guidance.
 {¶ 41} Pursuant to R.C. 3105.18(H), a domestic relations court has the authority to award reasonable attorney's fees in divorce cases to either party. In order to award attorney's fees under R.C. 3105.18(H), a trial court must determine that the attorney's fees are reasonable, that the payor has the ability to pay the attorney's fees, and that the other party will be prevented from fully litigating his or her rights and adequately protecting his or her interests if attorney's fees are not awarded. See Trott v. Trott, 10th Dist. No. 01AP-852, 2002-Ohio-1077 at ¶ 10.
 {¶ 42} The trial court must make the determination equitably and fairly to serve the ends of justice. Farley v. Farley
(1994), 97 Ohio App.3d 351, 357. The court should also consider the earning ability of each of the parties and their respective assets and liabilities. Bowen v. Bowen (1999),132 Ohio App.3d 616, 642, quoting Birath v. Birath (1988), 53 Ohio App.3d 31. An appellate court may not reverse a trial court's decision regarding an attorney fee award absent an abuse of discretion.Rand v. Rand (1985), 18 Ohio St.3d 356, 359.
 {¶ 43} In the case at bar, the trial court found that Ida is entitled to attorney's fees because Gerald consistently refused to comply with discovery requests, thereby incurring unnecessary attorney's fees and delaying the determination of this case on the merits. The court also found that Ida was unemployed and could not, therefore, pay all of the fees engendered during the course of this case.
 {¶ 44} In addition, the trial judge specifically entered a finding stating that "the legal representation and the corresponding fees were necessary to fully litigating [Ida's] rights and adequately protecting her interests." The facts set forth by the court below also support a finding that Gerald has the ability to pay some of Ida's attorney's fees. Finally, Ida submitted two statements reflecting the fees charged by her attorney and testified that they were generated during the course of the divorce proceedings, especially in connection with Gerald's failure to comply with discovery requests.
 {¶ 45} Considering the fact that Ida was unemployed, albeit receiving $3,000 per month in temporary spousal support, and that Gerald's actions caused an increase the amount of attorney's fees owed, we find that the trial court did not abuse its discretion in awarding Ida a portion of the fees. Accordingly, Gerald's fourth assignment of error is found not well-taken.
 {¶ 46} Ida's first cross-assignment of error addresses the valuation date of the Transco profit sharing trust.
 {¶ 47} In its Findings of Fact, the trial court determined that the profit sharing trust should be valued "from the date of the parties' marriage through the journalization date [August 30, 2003] of the final judgment entry of divorce, together with any appreciation or depreciation." In his Conclusions of Law, the trial judge held, however, that the profit sharing trust would be divided equally between the parties as of November 22, 2002, the date of the final divorce hearing. There is, therefore, an internal conflict in the trial court's judgment entry on the question of the date on which the profit sharing trust is to be valued.
 {¶ 48} Ida urges this court to find that the trial court abused its discretion and, in the name of equity, to find that as stated in the court's Findings of Fact, the profit sharing trust shall be divided equally as of the date, August 30, 2003, of the journalization of final judgment. We decline to do so. The determination of a valuation date for the marital assets is one left to the discretion of the trial court. See R.C.3105.171(A)(2)(a) and R.C. 3105.171(A)(2)(b); Gullia v. Gullia
(1994), 93 Ohio App.3d 653, 666. Thus, while we find Ida's first assignment of error well-taken, we shall remand this cause to the trial court for the sole purpose of deciding the valuation date of the profit sharing trust and for the amendment of its judgment entry of divorce.
 {¶ 49} In her second cross-assignment of error, Ida asserts that the trial court abused its discretion by awarding her only $2,000 in attorney's fees. Again, a reading of the trial court's judgment on this issue reveals that the trial court was very concerned about the fact that Ida was forced to incur additional attorney's fees due to Gerald's "obstructionist" behavior during discovery. In fact, the court noted that Gerald did not provide the cost of COBRA benefits and a valuation statement of the profit sharing trust until the date of trial. Thus, the gravamen of the court's decision on this issue is to compensate Ida for unnecessary attorney's fees that could have prevented her from fully litigating the merits of her case. Accordingly, our review of the record, particularly the fact that Ida is receiving almost $3,000 per month in spousal support, leads us to the conclusion that the trial court's attitude in awarding Ida $2,000 in attorney's fees is not unreasonable, arbitrary, or unconscionable. Ida's second cross-assignment of error is found not well-taken.
 {¶ 50} In her third cross-assignment of error, Ida maintains that the trial court abused its discretion in failing to order Gerald to pay his one-half of the Visa debt with his share of the proceeds from the sale of the marital residence. Again, the trial court found that the entire $9,633.25 owed on the Visa was marital debt and ordered Gerald to pay one-half, $4,816.63, of that debt. Based on the circumstances of this cause, we cannot say that failure, if any, on the part of the trial court to prescribe the means by which Gerald must comply with that order is an abuse of discretion. Therefore, Ida's third cross-assignment of error is found not well-taken.
 {¶ 51} The judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. This cause is remanded to the trial court for the purpose of crediting Gerald's arrearage with the amount, $1,133.78, of the last mortgage payment on the marital residence and to determine the valuation date of the profit sharing trust. Gerald S. Beran and Ida P. Beran are ordered to pay the costs of this appeal in equal shares.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Handwork, P.J., Knepper, J., Lanzinger, J., concur.
[1] "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171
[3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
[2] R.C. 3105.18(H), as effective January 1, 1991, made attorney's fees a part of spousal support. See Am. Sub. S.B. No. 3 (143 Ohio Laws, Part I, 53, 109-110).