OPINION *Page 2 
{¶ 1} Appellant Joyce Combs appeals from her judgment of divorce in the Stark County Court of Common Pleas, Domestic Relations Division. Appellee Michael Combs is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on July 2, 1989. Five children were born of the marriage, one of whom was emancipated by the time of the divorce decree sub judice. It is undisputed that appellee moved out of the marital residence in October 2006.
 {¶ 3} Prior to the divorce action, appellant had filed a petition for an ex parte civil protection order against appellee. As part of the March 29, 2007 CPO resulting from that petition, appellee, who is employed as a lieutenant with the Ohio State Highway Patrol, was temporarily ordered to deposit all but $750.00 of each of his paychecks into the parties' joint checking account. Appellant dismissed the CPO petition in June 2007.
 {¶ 4} On September 10, 2007, appellant filed a complaint for divorce. Appellee answered and filed a counterclaim on October 3, 2007. On October 23, 2007, the trial court issued temporary orders, including child support and spousal support. Furthermore, appellant was named temporary residential parent of the minor children, while appellee was then ordered to pay the mortgage on said residence while the divorce was pending.
 {¶ 5} The divorce action proceeded to a final evidentiary hearing conducted on May 13-14, 2008 and May 23, 2008. On July 8, 2008, the trial court issued a decree of divorce, with findings of fact and conclusions of law, as further analyzed infra. *Page 3 
 {¶ 6} Appellant filed a notice of appeal on August 7, 2008. She herein raises the following five Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT JOYCE COMBS WAS GUILTY OF FINANCIAL MISCONDUCT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 8} "II. THE TRIAL COURT ERRED IN FINDING JOYCE COMBS GUILTY OF FINANCIAL MISCONDUCT AS A MATTER OF LAW.
 {¶ 9} "III. THE TRIAL COURT ERRED BY FINDING THE TERM OF THE COMBS MARRIAGE FROM JULY 2, 1989 UNTIL AUGUST (SIC) 4, 2006.
 {¶ 10} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ALLOCATING CERTAIN CREDIT CARD DEBT, ALTHOUGH INCURRED DURING THER (SIC) TERM OF MARRIAGE, IN AN INEQUITABLE AND UNEQUAL MANNER.
 {¶ 11} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE AMOUNT (SIC) SPOUSAL SUPPORT AWARDED TO JOYCE COMBS."
 I., II. {¶ 12} In her First and Second Assignments of Error, appellant contends the trial court erred and abused its discretion in finding she had committed financial misconduct. We disagree.
 {¶ 13} R.C. 3105.171(E)(3) directs that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." *Page 4 
 {¶ 14} As the inclusion of the term "may" in R.C. 3105.171(E)(3) indicates, the decision regarding whether to compensate a party for the financial misconduct of the opposing party is discretionary with the trial court. Handlovic v. Handlovic (Sept. 11, 2000), Ashland App. No. 99-COA-01310, citing Leister v. Leister (Oct. 23, 1998), Delaware App. No. 97CA-F-07027. Therefore, a trial court's decision on this issue will not be reversed on appeal absent a showing of an abuse of discretion; i.e., a showing that the trial court's decision is arbitrary, unreasonable or unconscionable and not merely an error of law or judgment. Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.[1]
 {¶ 15} In concluding that appellant in the case sub judice had committed financial misconduct, the trial court found that appellant had withdrawn $7,700.00 from the parties' joint checking account in March 2007. The court additionally found appellant neglected to pay the mortgage on the martial residence, nearly resulting in foreclosure.
 {¶ 16} The record indicates that appellee moved out of the marital residence in October 2006, which was prior to both the CPO action and the filing of the divorce complaint. After he moved out, appellee continued to have his paychecks deposited into the parties' joint checking account. As noted previously, the parties' financial arrangements were altered in April 2007, when the CPO of March 29, 2007 began requiring appellee to turn over to appellant all but $750.00 of each paycheck. The CPO further made appellant-wife responsible for paying the mortgage. This arrangement *Page 5 
continued by agreement of the parties even after appellant dismissed the CPO action, until such time as temporary orders were issued in the divorce action in October 2007.
 {¶ 17} The evidence showed that in the month of March 2007, during which time approximately $11,000.00 was deposited into the joint account (including the parties' tax return proceeds), appellant withdrew $7,700.00 from the checking account. This was accomplished in three increments: $5,000.00 (via signed withdrawal slip), $2,200.00 (check made out to "cash" and endorsed by appellant), and $500.00 (another check made out to "cash" and endorsed by appellant). Although appellant thereafter claimed to have re-deposited approximately $3,900.00, the court found that appellant could not document where those funds came from, other than from subsequent support checks supplied by appellee. Furthermore, appellant failed to pay the mortgage in March, May, June, and August of 2007. This failure was then exacerbated by her inaction in defending against the foreclosure and her decision to avoid telling appellee about the bank's legal action, resulting in significant reinstatement costs borne by appellee.
 {¶ 18} Upon review of the record, we do not find the trial court erred or abused its discretion in finding financial misconduct by appellant and dividing the parties' marital property accordingly. See, also,Koegel v. Koegel (1982), 69 Ohio St.2d 355, 432 N.E.2d 206 (emphasizing that a trial judge should be given wide latitude in dividing property between the parties).
 {¶ 19} Appellant's First and Second Assignments of Error are therefore overruled. *Page 6 
 III. {¶ 20} In her Third Assignment of Error, appellant contends the trial court erred in establishing the term of the parties' marriage. We disagree.
 {¶ 21} R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing. Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 630, 725 N.E.2d 1165. Therefore, it is presumed the date of the final divorce hearing is the appropriate termination date of the marriage. Glick v. Glick (1999),133 Ohio App.3d 821, 828, 729 N.E.2d 1244. However, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. SeeBerish v. Berish (1982), 69 Ohio St.2d 318, 321.
 {¶ 22} In the case sub judice, the trial court used a termination date of October 4, 2006, which was the undisputed date appellee moved out of the marital residence and began living in an apartment. See Decree at 13. Appellant asserts that she remained financially dependent on appellee during the separation, and that appellee would periodically return to the marital home during that time and sleep over "while the parties attempted reconciliation." Appellant's Brief at 19. Appellee responds that this happened only one time, when he accidentally fell asleep on the couch after visiting the children, and that appellant was thereafter very upset about the overnight stay. See Tr. III at 23-24. *Page 7 
 {¶ 23} Nonetheless, in addressing issues of marriage termination dates, without some showing of prejudice, an appellate court has no basis for reversing a trial court's decision. See, e.g., Fernback v.Fernback, Mahoning App. No. 00-CA-276, 2001-Ohio-3482, citing Smith v.Flesher (1967), 12 Ohio St.2d 107, 110. Here, the decree ordered division of the marital portion of appellee's highway patrol pension as of May 13, 2008, and ordered appellant responsible for the mortgage beginning on June 1, 2008. Because these orders were brought forward to the approximate date of the decree, under the circumstances of this case, we find no establishment of prejudice warranting reversal regarding the court's use of the termination of marriage date of October 4, 2006.
 {¶ 24} Accordingly, appellant's Third Assignment of Error is overruled.
 IV. {¶ 25} In her Fourth Assignment of Error, appellant contends the trial court abused its discretion in finding the two Bank of America credit cards and the Capital One credit card to be appellant's separate debt. We disagree.
 {¶ 26} "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." Valentine v. Valentine, (Jan. 10, 1996), Ashland App. No. 95COA01120, citing Peck v. Peck (1994) 96 Ohio App.3d 731, 734. In order to find an abuse of that discretion, we must determine the trial court's order was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, supra. Additionally, as a general rule," * * * the holding of title to property by one spouse individually or by both spouses in a *Page 8 
form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H).
 {¶ 27} In the case sub judice, the court found the following debts to be marital:
 {¶ 28} GE / Best Buy credit card $671.03
 {¶ 29} Sears credit card $403.34
 {¶ 30} Edward Jones credit card $533.69
 {¶ 31} Medical bills $738.12
 {¶ 32} However, the following three credit cards were found to be appellant's separate debt:
 {¶ 33} Bank of America (MBNA) credit card $ 570.94
 {¶ 34} Bank of America credit card $1,819.94
 {¶ 35} Capital One credit card $ 401.31
 {¶ 36} The trial court based its decision on this issue on what was essentially a credibility call between appellant and appellee. Appellee testified that he was not aware of the cards' existence, and that appellant had falsely represented to him on prior occasions that other credit cards had been paid off. Moreover, this Court has clearly expressed its reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award. See Harper v. Harper (Oct. 11, 1996), Fairfield App. No. 95 CA 56, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220, 459 N.E.2d 896.
 {¶ 37} Viewing the marital property award in its entirety, we do not find the trial court abused its discretion in dividing the parties' credit card responsibility.
 {¶ 38} Appellant's Fourth Assignment of Error is overruled. *Page 9 
 V. {¶ 39} In her Fifth Assignment of Error, appellant contends the trial court abused its discretion in deciding the amount of spousal support awarded to appellant. We disagree.
 {¶ 40} A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. See Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore, supra.
 {¶ 41} R.C. 3105.18(C)(1)(a) through (n) provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support:
 {¶ 42} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 43} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of *Page 10 
living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 44} In the case sub judice, the trial court ordered spousal support to appellant in the amount of $1,500.00 per month, effective June 1, 2008, with no retention of jurisdiction by the court. The court ordered termination upon either party's death, appellant's remarriage, or the passage of fifty-two months, whichever occurs first. Decree at 15. The court, earlier in its decision, also imputed annual income to appellant.
 {¶ 45} The initial thrust of appellant's argument challenges the imputation of income to her. We note the trial court heard testimony from Victor Valli, an occupational expert from Pyramid Employment and Training Services. According to Valli's evaluation, appellant has claimed no emotional or physical conditions which would impair her ability to work. Valli reviewed appellant's work history, occupational qualifications, and prevailing opportunities and salary levels in the area. Finding that appellant had the *Page 11 
potential for "routine office work," Valli indicated a potential wage range for her interest areas and qualifications to be $19,843.00 to $27,851.00 annually. The trial court imputed income to appellant at the low end of that range. See Decree at 12. The court thereupon, via a nunc pro tunc entry, utilized an even lower figure of $14,335.00, representing imputed minimum wage. See Nunc Pro Tunc Entry, July 9, 2008.
 {¶ 46} The remainder of appellant's argument does not appear to cite any particular statutory factor which was allegedly overlooked in the trial court's analysis. The court in this case, inter alia, referenced that both parties are in "relatively good health.' Decree at 12-13. Appellee's income as a Highway Patrol lieutenant was found to be $79,340.80. The parties were married for slightly more than seventeen years, and experienced a moderate standard of living. Decree at 13. Of the remaining four minor children, only one is at an age where day care would be an issue. Id. As noted previously, the marital residence, with an equity value of $33,097.17, was awarded to appellant, albeit with responsibility for the mortgage and other house-related expenses.
 {¶ 47} We note R.C. 3105.18 does not require the lower court to make specific findings of fact regarding spousal support awards. While R.C. 3105.18(C)(1) does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. Carroll v. Carroll, DelawareApp. No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 28, citing Watkins v.Watkins, Muskingum App. No. CT 2001-0066, 2002-Ohio-4237, (additional citations omitted). *Page 12 
 {¶ 48} Upon review of the record, we are unpersuaded that the court abused its discretion in awarding spousal support of $1,500.00 per month to appellant under the facts and circumstances of this case.
 {¶ 49} Appellant's Fifth Assignment of Error is therefore overruled.
 {¶ 50} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is affirmed.
Wise, J. Farmer, P. J., and Gwin, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is affirmed.
Costs assessed to appellant.
[1] Appellant's brief cites Eggeman v. Eggeman, Auglaize App. No. 2-04-06, 2004-Ohio-6050, for the proposition that "[b]efore a compensating award is made * * *, there must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets." Id. at ¶ 24. However, appellant provides no precedent from the Fifth District applying this standard. *Page 1