[Cite as *Giltz v. Giltz*, 2012-Ohio-1727.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
| | : | JUDGES: |
| DIANE GILTZ | : | Sheila G. Farmer, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 2011CA00173 |
| | : | |
| | : | |
| CLYDE GILTZ | : | O P I N I O N |
| Defendant-Appellant | | |


CHARACTER OF PROCEEDING:      Civil Appeal from Stark County
                             Court of Common Pleas, Family
                             Court Division, Case No. 2010-DR-
                             00922

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 16, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

DAVID S. AKE                          JEREMY FOLTZ
101 Central Plaza, South              122 Central Plaza North
Suite 600                             Canton, Ohio  44702
Canton, Ohio  44702

*Edwards, J.*

{¶1} Appellant, Clyde Giltz, appeals a judgment of the Stark County Common Pleas Court, Family Court Division, ordering him to pay appellee Dianne Giltz spousal support in the amount of $568.21 per month for 190 months as a part of a judgment of divorce on the grounds of living separate and apart.

STATEMENT OF FACTS AND CASE

{¶2} The parties were married on June 22, 1963. In November of 1999, appellant vacated the marital residence because he was involved with another woman. Appellee remained in the home until 2001. Appellee then moved in with her boyfriend who paid many of her expenses because she could not afford to live separately. She did not seek a termination of her marriage from appellant because of her religious beliefs. Finally, in 2010 appellee received a letter from appellant's attorney stating that appellant wanted a dissolution of the marriage. At that point, appellee hired an attorney and filed for divorce.

{¶3} During the time the parties lived apart, they jointly owned the marital residence. At the time of the divorce hearing, they wanted to continue joint ownership until their son could obtain financing to purchase the home. The parties also filed a joint bankruptcy in 2004.

{¶4} Appellant is sixty-eight years old and employed by the Heinz Corporation, earning $29,000.00 annually. Appellee is retired and has health problems. Four years ago, she became very ill with ravenous bacterial pneumonia. As a result, her lungs are compromised, and she lost her short term memory from spending sixty days in a coma. She receives Social Security in the amount of $8,292.00 per year after her payment for

Medicare Part B. She was covered by appellant's health insurance until the time of the divorce, but subsequent to the divorce would have to purchase supplemental health insurance in the amount of $142.00 per month.

{¶5} The case proceeded to a hearing before a magistrate. Following the hearing, the magistrate found the date of the termination of the marriage to be the date of the hearing, April 4, 2011. The magistrate recommended that appellant pay spousal support in the amount of $568.21, terminable by death of either party, remarriage of appellee or the expiration of 190 months. The amount was subject to the continuing jurisdiction of the court. Following objections to the magistrate's decision, the trial court overruled the objections and entered judgment in accordance with the recommendation of the magistrate. Appellant assigns two errors:

{¶6} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY SPOUSAL SUPPORT TO APPELLEE WHERE APPELLEE COHABITED WITH AN UNRELATED MALE FOR AN EXTENDED PERIOD OF TIME PRIOR TO THE HEARING ON DIVORCE AND CONTINUES TO COHABITATE WITH ANOTHER IN A HUSBAND AND WIFE TYPE OF RELATIONSHIP.

{¶7} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT USED THE ACTUAL DATE OF DIVORCE AS THE DATE THE MARRIAGE ENDED WHEN THE EVIDENCE WAS UNDISPUTED AS TO A DE FACTO TERMINATION DATE."

I

{¶8} Appellant argues that the trial court abused its discretion in ordering him to pay spousal support when appellee is cohabiting with another man.

{¶9} Appellee argues that appellant failed to object to the magistrate's decision on this basis. However, appellant objected to the award of spousal support on the basis that her expenses were being met from other sources. Further, at the objection hearing, appellant argued that appellee's expenses were being paid by her boyfriend with whom she resided. We, therefore, find that this issue has been preserved for appeal.

{¶10} A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E2d 1140 (1983).

{¶11} R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment and duration of spousal support. These factors are:

{¶12} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶13} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶14} "(b) The relative earning abilities of the parties;

{¶15} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶16} "(d) The retirement benefits of the parties;

{¶17} "(e) The duration of the marriage;

{¶18} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶19} "(g) The standard of living of the parties established during the marriage;

{¶20} "(h) The relative extent of education of the parties;

{¶21} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶22} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶23} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶24} "(l) The tax consequences, for each party, of an award of spousal support;

{¶25} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶26} "(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶27} Trial courts have the power to terminate or reduce an award of spousal support based on cohabitation. *Moell v. Moell*, 98 Ohio App.3d 748, 649 N.E.2d 880(1994). While R.C. 3105.18(C) lists a number of factors for a trial court to consider when determining spousal support, cohabitation is not expressly listed as a factor. However, R.C. 3105.18(C)(1)(n) states that any other factor that the trial court expressly finds to be relevant and equitable can be used to determine spousal support. *Yarnell v. Yarnell*, 5th Dist. No. 05 CAF 0064, 2006-Ohio-3929, ¶42.

{¶28} Based on the facts and circumstances of this case, we find no abuse of discretion in the award of spousal support. While appellee was living with her boyfriend who paid her expenses, she testified she "would have surely perished" had it not been for her boyfriend because she received no support from appellant and was unable to survive financially. Tr. 18. She testified that she might consider moving out of her boyfriend's home if financially able to do so because she "would like to be an independent woman after having been married for 48 years." Tr. 19. She testified that her Catholic religion does not condone her current living arrangements, but she had no choice because she could not support herself financially. Tr. 20. The evidence further reflected that appellee was in poor health, while appellant was employed. This was a long-term marriage of 47 years and 10 months. The court further reserved continuing

jurisdiction over the amount of support because appellant had reached the age of full retirement.

**{¶29}** The first assignment of error is overruled.

II

**{¶30}** Appellant argues that the court abused its discretion in finding the termination date of the marriage to be April 14, 2011, rather than November, 1999, when appellant moved out of the marital residence.

**{¶31}** R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is the date of termination of the marriage. *Combs v. Combs,* 5th Dist. No. No. 2008CA00169, 2009-Ohio-1683, ¶ 21. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, is the date of the final divorce hearing. *Bowen v. Bowen,* 132 Ohio App.3d 616, 630, 725 N.E.2d 1165 (1999).

**{¶32}** R.C. 3105.171(A)(2) also establishes an alternative date for determining the end of the marriage:

**{¶33}** "(A) As used in this section:

**{¶34}** "(2) 'During the marriage' means whichever of the following is applicable:

**{¶35}** "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

**{¶36}** "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects

dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

**{¶37}** Courts, however, should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances. *Boggs v. Boggs,* 5th Dist. No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 66, citing *Day v. Day*, 40 Ohio App.3d 155, 158, 532 N.E.2d 201 (1988); *Stafinsky v. Stafinsky* , 116 Ohio App.3d 781, 689 N.E.2d 112 (1996); *Schnieder v. Schnieder* , 110 Ohio App.3d 487, 674 N.E.2d 796 (1996).

**{¶38}** Generally, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. *Boggs, supra.* "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." *Jefferies v. Stanzak*, 135 Ohio App.3d 176, 179, 733 N.E.2d 305 (1999), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Therefore, in order to find an abuse of discretion there must be a determination that the trial court's judgment is "unreasonable, arbitrary, or unconscionable." *Blakemore, supra*.

**{¶39}** Appellant moved out of the house in November, 1999, because he was involved with another woman.  Appellee did not seek a divorce due to religious beliefs. And, even though the parties did not live together again up to the time of the April, 2011, hearing, they continued to jointly own the marital residence.  Appellee continued to be covered by appellant's health insurance, and the parties jointly filed for bankruptcy in 2004.  The magistrate specifically noted that he selected the date of April 14, 2011,

because neither party filed earlier, appellant was not obligated to pay spousal support during this period, and based on the facts presented, an award of spousal support would have been likely had the parties filed earlier.  We find no abuse of discretion in the court's failure to apply a de facto termination date of the marriage.

**{¶40}** The second assignment of error is overruled.

**{¶41}** The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.


By: Edwards, J.

Farmer, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/r0131

[Cite as *Giltz v. Giltz*, 2012-Ohio-1727.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

DIANE GILTZ                                    :
                                               :
                Plaintiff-Appellee             :
                                               :
                                               :
-vs-                                           :          JUDGMENT ENTRY
                                               :
CLYDE GILTZ                                    :
                                               :
                Defendant-Appellant            :          CASE NO. 2011CA00173


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.  Costs assessed to appellant.


                                          _____

                                          _____

                                          _____

                                                          JUDGES