[Cite as *Simpson v. Simpson*, 2013-Ohio-2301.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ADAM C. SIMPSON | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 12CA0010 |
| JO A. SIMPSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Morrow County Court of Common Pleas, Domestic Relations Division, Case No. 2009 DR 0411

JUDGMENT:    AFFIRMED

DATE OF JUDGMENT ENTRY:    May 30, 2013

APPEARANCES:

For Appellant:

TOM C. ELKIN
P.O. Box 189
Mt. Gilead, OH 43338

For Appellee:

W. MARK ADAMS
127 North Main Street
Mt. Gilead, OH 43338

*Delaney, P.J.*

{¶1} Defendant-Appellant Jo A. Simpson ("Wife") appeals from the May 31, 2012 Journal Entry of Judgment (Decision on Objections to Magistrate's Decision) of the Morrow County Court of Common Pleas, Domestic Relations Division. Plaintiff-Appellee Adam Simpson ("Husband") did not file a brief in the instant appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are adduced from testimony of Husband, Wife, and a rebuttal witness at the final hearing before the trial court.

{¶3} Husband and Wife were married on October 30, 2006 in Sarasota, FL. No children were born of the marriage. Husband filed a Complaint for Divorce on September 15, 2009.

{¶4} Prior to the marriage, Husband lived primarily in Ohio and Wife lived primarily in Florida. The marital home at 6949 County Road 201, Centerburg, Morrow County is a pre-marital asset in which Husband has resided for over 20 years. The home is mortgaged for over $185,000, which Husband testified is more than the home is worth.

{¶5} Wife's home located at 1646 Oak View Drive, Sarasota, FL is a pre-marital asset of Wife. Upon their marriage, Wife lived with Husband in Ohio for seven months, after which the couple went back and forth between the Ohio residence and the Florida residence.

### Parties' Incomes, Expenses, and Earning Capabilities

{¶6} Both parties are disabled. Husband worked as a licensed carpenter until he suffered a back injury in 1997 which left him disabled; his income consists of Social

Security disability which totals approximately $52,000 per year. Wife is an interior designer by profession; her employment has included modeling, selling items on Ebay, and providing continuing education for interior designers. Wife testified she was last employed in 2008. Wife's tax returns for the years 2007, 2008, and 2009 indicate she earned $8306, $12,381, and $861, respectively. In 2010, Wife had no income. She testified she maintains one professional license enabling her to provide continuing education but has not renewed her interior designer license.

{¶7} Wife testified that she has a number of health issues. She was diagnosed with fibromyalgia and chronic fatigue syndrome in 2003. She was in remission when she met Husband but has since had numerous operations beginning in 2009. Wife was found to be disabled in May, 2011 and receives Social Security in the amount of $1041 per month. Wife testified that she spends $3468.16 per month on prescription medications.

{¶8} Pursuant to the trial court's temporary order, Husband paid Wife $300.00 in temporary spousal support for 24 months, totaling $7,200.00. Wife testified she has no source of income other than Social Security, the temporary spousal support from Husband, and some income from Ebay sales.

{¶9} The couple largely kept their finances separate during the marriage. They maintained separate bank accounts, had no joint credit accounts, and purchased their own groceries. Husband testified that he liquidated an account at Landmark Bank which had contained a balance of $965.55. Husband testified he made all deposits to this account.

{¶10} Wife has an IRA valued at $131,000 which Husband agrees is her separate property. Husband has no retirement accounts.

{¶11} Husband has no savings account and testified he had $268 in a checking account. His income goes toward bills and he testified he lives "paycheck to paycheck."

*Vehicles*

{¶12} Husband owns a 1989 truck and a 1977 Corvette which Wife agreed are his separate property. During the marriage Husband drove a 2003 Ford Explorer. After the separation, Husband financed a 2010 Chevy Malibu and then a 2009 Dodge Challenger. Husband owned a 2004 Harley Davidson motorcycle which he financed for $13,000 and sold for $3000.

{¶13} Wife drove a BMW prior to the marriage which she paid off during the marriage. She also owns a Mercedes Benz and a Yamaha Roadster motorcycle. Husband agrees those vehicle are Wife's separate property.

{¶14} In 2008 the parties bought a 1975 Winnebago together for $500. Husband testified the vehicle has been driven once, has a leaky roof, and is worth around $500.

*Other Real Property*

{¶15} Wife owns real property in Maine. Some evidence was adduced to establish Wife received $67,000 from civil litigation involving theft of timber from the Maine property, although Wife contended she did not receive any such funds. Husband does not seek any proceeds from the recovery.

{¶16} Husband owns a parcel of real property jointly with his father. The land was purchased on December 12, 1996 and is valued at approximately $30,000. At the time of the marriage, Husband owed $5,164 on the parcel and paid $118.00 per month toward the mortgage on the property, eventually paying it off. Husband made the payments from his own funds.

{¶17} A hearing was held on the divorce action on October 7, 2011, and the magistrate's decision was issued on November 8, 2011. Wife filed objections to the magistrate's decision. On May 31, 2012, the trial court filed its journal entry of judgment adopting the magistrate's decision with modifications. It is from this entry Wife now appeals.

{¶18} Wife raises four Assignments of Error:

{¶19} "I. THE COURT ABUSED ITS DISCRETION BY FINDING THAT THERE WAS A DE FACTO TERMINATION OF THE MARRIAGE AS OF SEPTEMBER 15, 2009."

{¶20} "II. THE COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FAILED TO AWARD APPELLANT SPOUSAL SUPPORT."

{¶21} "III. THE COURT ABUSED ITS DISCRETION WHEN IT HELD THAT THE APPELLANT WAS NOT ENTITLED TO AN AWARD OF ATTORNEY FEES."

{¶22} "IV. THE COURT ABUSED ITS DISCRETION WHEN IT HELD THAT THE APPELLANT WAS NOT ENTITLED TO A MONETARY AWARD AGAINST THE APPELLEE FOR MARITAL REAL ESTATE AND FOR HER SEPARATE PROPERTY INVESTED INTO THE MARITAL REAL ESTATE."

I.

{¶23} In her first assignment of error, Wife argues the trial court abused its discretion in finding a de facto termination of the marriage as of September 15,[1] 2009, arguing instead the court should have used the final hearing date of October 7, 2011 as the date of termination of the marriage. We disagree.

{¶24} R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is the date of termination of the marriage. *Giltz v. Giltz*, 5th Dist. No. 2011CA00173, 2012-Ohio-1727, ¶ 31, citing *Combs v. Combs*, 5th Dist. No. 2008CA00169, 2009-Ohio-1683, ¶ 21. As we have previously found, R.C. 3105.171(A)(2) "creates a statutory presumption that the proper date for the termination of a marriage is the date of the final divorce hearing." *Giltz*, supra, 2012-Ohio-1727, ¶ 31, citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 630, 725 N.E.2d 1165 (9th Dist.1999).

{¶25} However, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. See *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982). R.C. 3105.171(A)(2) establishes an alternative date for determining the end of the marriage:

---

[1] The trial court's judgment entry states in pertinent part, "However, the Court finds that the duration of the marriage should be from the date of the marriage to the date the Divorce Complaint was filed. Therefore, the Court hereby adopts the Magistrate's Decision as modified which is restated hereafter and is now the decision of this Court, as follows: ****. 2. The duration of the marriage is from October 26, 2006 to September 16 (*sic*), 2009." The divorce complaint was filed on September 15, 2009, and Wife references September 15, 2009 throughout her brief, so we find the trial court intended September 15, 2009 to be the termination date of the marriage and September 16 is a typographical error.

(A) As used in this section:

****.

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶26} Courts should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances. *Boggs v. Boggs*, 5th Dist. No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 66 citing *Day v. Day*, 40 Ohio App.3d 155, 158, 532 N.E.2d 201(10th Dist.1988); *Stafinsky v. Stafinsky*, 116 Ohio App.3d 781, 689 N.E.2d 112 (11th Dist.1996); *Schnieder v. Schnieder*, 110 Ohio App.3d 487, 674 N.E.2d 796 (11th Dist.1996). Generally, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an

abuse of discretion. *Boggs*, supra citing *Berish v. Berish*, supra. "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." *Jefferies v. Stanzak*, 135 Ohio App.3d 176, 179, 733 N.E.2d 305 (12th Dist.1999) citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Therefore, in order to find an abuse of discretion there must be a determination that the trial court's judgment is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶27} In the instant case, the trial court determined that the totality of the circumstances necessitated a de facto termination date of September 15, 2009, the date the divorce complaint was filed.[2] The parties lived completely separate and apart after January 13, 2009, which was the date of termination used by the magistrate then modified by the trial court.  Wife's argument in support of extending the marriage to a five-year duration is based upon her reliance upon Husband's VA benefits through October 7, 2011.  She speculates the VA may attempt to recover any overpayments made on her behalf until October 7, 2011. The trial court found Wife was covered under Medicare Part B. We cannot find, though, under the totality of the circumstances, that Wife's reliance upon Husband's veteran's benefits constituted an "ongoing joint interest" such as that described in *Boggs*, supra, 2008-Ohio-1411.  In that case, we noted the parties had ongoing joint interests in one party's need for medical coverage and a mutual interest in maintaining the marital residence until a

---

[2] See Footnote 1, supra.

foreclosure sale.  Id.  Any mutual circumstances existing here are tenuous at best and would not lead us to conclude the trial court's decision was unreasonable, arbitrary, or unconscionable.

{¶28} Upon our review of the record, we cannot find the trial court abused its discretion in determining the de facto termination date of the marriage was September 15, 2009.  Wife's first Assignment of Error is overruled

II.

{¶29} In her second assignment of error, Wife argues the trial court abused its discretion in not awarding spousal support on her behalf.  We disagree.

{¶30} A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion.  *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court is to consider in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support:

> (C)(1) In determining whether spousal support is appropriate and
> reasonable, and in determining the nature, amount, and terms of
> payment, and duration of spousal support, which is payable either
> in gross or in installments, the court shall consider all of the
> following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain

appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶31} The trial court adopted the findings of fact and decision of the magistrate relative to spousal support, which lists and evaluates each statutory factor. Ultimately the parties each bear their share of relative financial advantages and disadvantages. Husband has greater income than Wife; both parties are disabled and receive social security disability; the parties are in their fifties and each have chronic health problems; Wife has an IRA which is separate property and Husband has no retirement benefits; the couple lived together for less than three years yet the litigation has been pending for two years; during the marriage the parties' credit, vehicles, homes, and grocery spending were kept separate as they maintained a "relatively comfortable" standard of living within their means; Wife is an interior decorator and Husband is a laborer; and finally, upon termination of the marriage Wife will have significant economic advantages that Husband will not, despite his higher income. Husband has negative equity in his home, fewer assets than Wife, and "credibly testified that he lives paycheck to paycheck." Wife, on the other hand, owns her home, car, and

motorcycle and has over $100,000 in an IRA account. The remaining statutory factors were inapplicable or were not raised by the parties.

{¶32} We find the trial court did not abuse its discretion in failing to award spousal support to Wife.

{¶33} Wife's second assignment of error is overruled.

III.

{¶34} In her third assignment of error, Wife argues the trial court abused its discretion in finding she is not entitled to an award of attorney fees. We disagree.

{¶35} An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Wildman v. Wildman*, 5th Dist. No. 12-CA-21, 2012-Ohio-5090, ¶ 79, citing *Howell v. Howell*, 167 Ohio App.3d 431, 2006–Ohio–3038, 855 N.E.2d 533 (2nd Dist.2006). R.C. 3105.73(A) governs the award of attorney fees and litigation expenses in domestic relations cases and provides:

> In an action for divorce * * * or an appeal of that action, a court may award all or part of the reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶36} In its judgment entry decree of divorce filed February 24, 2012, the trial court ordered that each party is responsible for his or her own attorney

fees and the costs of litigation. We have reviewed the record, weighed R.C. 3105.73 and find this order equitable having specifically considered the income and assets of the parties as discussed supra, and the parties' conduct.

{¶37} In its findings of fact and conclusions of law, the trial court adopted the Magistrate's decision with regard to attorney fees and costs of litigation. We find the following reasoning cited by the magistrate to be persuasive:

> O.R.C. Section 3105.73(A) expressly lists the conduct of the parties as one of the factors the court may consider in determining whether an award of attorney fees in (*sic*) equitable. In this case, [Wife's] own actions turned what should have been a fairly simple divorce based upon slightly more than two years of living with [Husband] into a confused attempt to make [Husband] pay for various decorative alterations to his home, her living expenses in both Florida and Mount Vernon throughout the proceedings and litigation costs. It was [Wife's] decision to stay in Mount Vernon after the case was continued, causing her to have additional expenses. Although she claims that the continuance was the reason, she also testified that she wanted to escape Florida's summertime heat. The Court finds that each party should bear their own expenses and attorney's fees in this case.

{¶38} In light of the entire record, we find the trial court did not abuse its discretion in ordering each party to pay their own attorney fees and costs of litigation,

and the decision is supported by competent, credible evidence. Wife's third assignment of error is overruled.

IV.

{¶39} In her fourth assignment of error, Wife argues summarily that the trial court abused its discretion in finding she was not entitled to a monetary award against Husband for "marital real estate" and for her "separate property invested into the marital real estate." We disagree.

{¶40} R.C. 3105.171(B) requires the trial court to determine what constitutes marital property and what constitutes separate property. "In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B). The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. R.C. 3105.171(E)(1).

{¶41} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry,* 66 Ohio St.2d 348, 421, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's

attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶42} We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and we will affirm if some competent, credible evidence supports the classification. *Thomas v. Thomas,* 5th Dist. No. 11 CAF090079, 2012–Ohio–2893, ¶ 31, 974 N.E.2d 679 citing *Taub v. Taub,* 10th Dist. No. 08AP750, 2009–Ohio–2762, ¶ 15. Valuing property involves factual inquiries and also requires an appellate court to apply a manifest weight of evidence standard of review. *Wright v. Wright,* 4th Dist. No. 94CA02, 1994 WL 649271 (November 10, 1994). An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶43} The marital real estate reference by Wife is land owned jointly by Husband and his father which was purchased on December 12, 1996, before the parties were married. At the time of their marriage, Husband owed approximately $5,164.00 on the parcel, which he paid off in monthly increments of $118. Husband testified he made these payments entirely from his own funds. Wife argues in her brief that "she had invested $10,290.97 into the [Husband's] real estate" but we are unable to find any evidence in the record supporting Wife's summary argument that the parcel was marital property, or that she made any investment therein.

{¶44} The trial court's decision does not constitute an abuse of discretion. Appellant's fourth assignment of error is overruled.

*CONCLUSION*

{¶45} Having overruled Wife's four assignments of error, the judgment of the Morrow County Court of Common Pleas is hereby affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

<div style="margin-left:45%">

_____

HON. PATRICIA A. DELANEY


_____

HON. W. SCOTT GWIN


_____

HON. JOHN W. WISE

</div>

PAD:kgb

[Cite as *Simpson v. Simpson*, 2013-Ohio-2301.]

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ADAM C. SIMPSON | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JO A. SIMPSON | : | |
| | : | |
| | : | Case No. 12CA0010 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Morrow County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE